**OKLAHOMA NATURAL GAS COMPANY, a corporation, Plaintiff in Error,**

v.

**Kenneth LONG and Lenore Long, Defendants in Error.**

No. 40648.

Supreme Court of Oklahoma.

Sept. 28, 1965.

Robert A. Huffman, John L. Arrington, Jr., Lupardus, Holliman & Hoffman, Tulsa, for plaintiff in error.

Tom Hieronymus, Woodward, Charles R. Nesbitt, Oklahoma City, for defendants in error.

LAVENDER, Justice.

On September 8, 1958, defendants in error, hereafter referred to as plaintiffs, filed their action in the District Court of Beaver County, Oklahoma, to quiet title to the SE¼ of Section 32, T 6N, Range 28 E.C.M., Beaver County, Oklahoma. The plaintiff in error, hereafter referred to as defendant, was alleged to be the holder of an oil and gas lease executed by plaintiffs on January 23, 1951, for a primary term of ten years and so long thereafter as oil or gas is produced from said land; that on October 27, 1952, said lease was assigned to defendant.

The petition alleges in addition to the usual allegations that it has expired by its own terms due to the failure of defendant to pay delay rentals or commence a well for oil or gas within the time for which delay rentals had been paid or to commence production from a well drilled on the land during such period. That such lease is therefore void and of no effect and constitutes a cloud on plaintiffs' title.

The amended answer of defendant, in addition to a general denial, alleged the execution of such lease; the payment of delay rentals for all time to January 23, 1957; that on the 16th day of October, 1956, the Corporation Commission created a 640-acre drilling area for the production of natural gas from a single well in said unit; that said unit covered all of Section 32, which included plaintiffs' land; that a natural gas well was completed in July, 1956, in the northeast quarter of said section, which was a commercial gas well, which well was shut in until a market was secured under proper orders of the regulatory authorities in March, 1958, since which date marketing has continued.

The reply of plaintiffs, in addition to a general denial, specifically denied the payment of delay rentals as required by the lease and denied compliance with the terms of the lease to keep such in force.

By amendment to this reply, it was alleged that the order of the Corporation Commission did not have the effect of communitizing the lease of plaintiffs with other lands in Section 32. It was also alleged that the Corporation Commission order was entered without service of notice on plaintiffs.

Again it was alleged that any gas well drilled elsewhere in Section 32 did not alter the terms of plaintiffs' lease.

Upon trial of the case, most of the facts were stipulated. Shortening this stipulation to the material facts, it was agreed upon the execution of the lease; ownership by defendant; that delay rentals have been paid continuing such lease in effect to January 23, 1957; that on October 16, 1956, the Corporation Commission entered an order which created 640-acre drilling and spacing units for the production of natural gas from the Chester Lime, common source of supply underlying Section 32; that a gas well was drilled on the SW¼ of Section 32. It was further stipulated that defendant used due diligence to secure a market for the gas; that tender of royalties due has been duly made by defendant and is being held for plaintiffs.

Upon this state of facts, the trial court cancelled plaintiffs' lease, and this appeal results.

In the case of Murphy v. Garfield Oil Co., 98 Okl. 273, 225 P. 676, the lessor sought cancellation for non-payment of delay rentals during the initiative period upon the ground that the lessee did not complete an oil or gas well upon the premises within any period for which delay rentals had been paid. The facts were a gas well of low productive yield had been completed on the premises, and this Court held that such was sufficient to excuse the lessee from the payment of any further delay rentals and was sufficient to prolong the life of the contract for the initiative period, pointing out, of course, that before the lease could be considered as extended beyond the initiative period oil or gas in paying quantities would be necessary.

█ The Murphy case demonstrates the purpose of such drill or pay clauses as is contained in the lease before us. The purpose of such provisions is to insure to the lessor, either that his property will be developed for oil or gas by commencing the drilling of a well during the initiative period, or *in lieu thereof* the lessor shall receive an agreed amount called "delay rental." It is inconceivable that the lessor could expect to receive both the delay rental and to have a well drilled on his property.

█ The case before us involves the following question: Under an oil and gas lease by the terms of which the lessee is obligated to either commence the drilling of a well upon the leased premises within one year or pay to the lessor a stipulated sum as delay rental, will the drilling of such a well upon lands other than the leased premises but located within the same well spacing unit relieve the lessee of his obligation to pay any further delay rentals?

We are of the opinion that such question must be answered in the affirmative.

█ We have heretofore held that the existence of such a well is sufficient to extend the term of the lease beyond its initiative period under clauses similar to the one in the lease before us, to-wit:

"It is agreed that this lease shall remain in force for a term of Ten Years from this date, and as long thereafter as oil or gas or either of them is produced from said land by lessee."

We are of the opinion that most of the contentions of the plaintiffs have been fully answered by the case of Layton v. Pan American Petroleum Corporation, Okl., 383 P.2d 624, a case which had not been decided at the time the instant case was tried in the lower court.

█ In that case we definitely determined that the drilling of a gas well upon the section established as a 640 acre drilling space extended all of the leases beyond their primary term, which leases covered land in said section and upon which no well had been drilled. The syllabus by the court reads:

"By virtue of 52 O.S.1961, Sec. 87.1, subsection d, the 'thereafter' clause and the legal effect of the pooling order of the Corporation Commission of Oklahoma combine to result in an extension of the primary term fixed in an oil and gas lease if the well on any portion of

the pooled acreage satisfies the requirements of the clause.

"The right of the Legislature to act under the police power of the state is a part of the existing law at the time of the execution of every contract, and as such becomes in contemplation of law a part of that contract."

See also State of Oklahoma ex rel. Commissioners of the Land Office v. Carter Oil Co. of West Virginia, Okl., 336 P.2d 1086, and Rein v. Humble Oil and Refining Co., Okl., 400 P.2d 800.

In the Layton case the question of delay rentals was likewise considered. In that case it was urged that the acceptance of delay rentals extended the lease. In disposing of this contention, we said in the body of the opinion:

"We think and *hold* that the first contention, supra, is wholly immaterial. If the lease was extended by production in the spacing unit, the payment or non-payment of delay rentals could not affect the matter in anywise."

█ █ It is contended by plaintiffs that this statement is dicta. With this contention we cannot agree since it was an issue in the case, but to dispel any doubt we now reiterate such holding which is in line with authorities from other jurisdictions. See Sohio Petroleum Co. v. V. S. & P. R. R. et al., 222 La. 383, 62 So.2d 615, 346 U.S. 802; Delatte v. Woods, 232 La. 341, 94 So.2d 281, and Smith v. Carter Oil Co., 104 F.Supp. 463.

The plaintiffs' contention that to construe a well spacing order so that the effect of same is to nullify the delay rental provisions of an oil and gas lease would render the act under which the well spacing order was authorized unconstitutional and void is not well taken.

█ The plaintiff has not been deprived of any rights provided for him in the lease agreement except to have a well drilled on his property, and this right is subject to limitation by act of the Corporation Commission. As we have heretofore point-

ed out, the lessor could not have the well drilled from which he will receive his proportionate share of the royalty and at the same time receive delay rentals, because the well was not drilled on his specific property. When this lease was entered into the parties knew of the authority of the Oklahoma Corporation Commission to enact well-spacing regulations in furtherance of conserving oil and gas, and they contracted subject thereto. The plaintiffs concede that such authority in the Corporation Commission is vital, and we quote from plaintiffs' brief:

"Well spacing properly furthers interests of conservation limiting the number of wells tapping a common source of supply. Waste in drilling an excessive number of wells, and in attempts to drain adjoining property, is prevented by well spacing orders. It is also in the interest of conservation to require all lessees and royalty owners in the spacing unit to share proportionately in the production from one well, rather than each lessee drilling a separate well."

█ Such statement is, in our opinion, inconsistent with the contention that lessee should continue to pay delay rentals upon a lease which he cannot drill and which lease has been extended by a producing well in the spacing area. These same contentions were advanced in the Layton case, supra, wherein we said in the body of the opinion:

"Among the remaining contentions of the plaintiffs are the following:

"1. That the constitutional rights of plaintiffs have been violated in holding the lease when no drilling has been had on plaintiffs' land.

"2. That the decision of the (lower) court disregards the contract between the parties and attempts to substitute another contract therefor.

"The validity of the statutes granting powers to the Corporation Commission has been upheld by this court under the police power. See Patterson v. Stano-

lind Oil & Gas Co., 182 Okl. 155, 77 P. 2d 83; Anderson v. Corporation Commission, Okl., 327 P.2d 699; Wakefield v. State of Oklahoma, Okl., 306 P.2d 305, and Wood Oil Co. v. Corporation Commission, 205 Okl. 537, 239 P.2d 1023.

"As said in Anderson v. Corporation Commission, supra:

" 'A statute authorizing the Corporation Commission to regulate production of oil and gas so as to prevent waste and to secure equitable apportionment among owners of the leasehold interest of the oil and gas underlying their land, and to fairly distribute among them, the costs of production and of the apportionment is a proper exercise of the police power and does not violate the provisions of the State or Federal Constitutions.'

"Neither do such statutes impair the obligation of contracts for the reason that such statutes were in existence at the time this oil lease was executed. Therefore, the statutory provisions were incorporated in the lease by operation of law.

"In the case of State ex rel. Roth v. Waterfield, 167 Okl. 209, 29 P.2d 24, we said in the body of the opinion:

" 'Thus it may be seen that changes in the obligations of contracts may be made when made as a proper exercise of the police power, not because constitutions may be suspended by police power, but because the right to legislate in the exercise of that power is a part of the existing law of the state at the time of the execution of the contract, and as such enters into the terms and provisions of the contract in the same manner that statutes prescribing procedure become a part of the contract.'

"And in the third syllabus we said:

" 'The right of the Legislature to act under the police power of the state is a part of the existing law at the time of the execution of every contract, and

as such becomes in contemplation of law a part of that contract.'

"The second contention, supra, is answered by the opinions of this court upholding oil and gas leases after the expiration of the primary term by the drilling of a well on any part of the spacing unit. See Gazin v. Pan American Petroleum Corporation [Okl. 367 P.2d 1010], supra."

The last contention of plaintiffs is that no proper notice was given plaintiffs in connection with the Corporation Commission order. No authorities are cited in the briefs sustaining this contention.

The only evidence offered in connection therewith was the testimony of Mrs. Long. The title was not in her name, and there is no showing that she was ever a necessary party to the proceedings. Her husband, in whose name the title stood, never testified. There is no evidence that he was not properly notified. The order of the Commission so finds.

In the case of Kunc v. Harper Turner Oil Company, Okl., 297 P.2d 371, an attack was made upon spacing orders of the Corporation Commission. In the body of the opinion appears this language:

"In creating the units here the Corporation Commission acted under statutory authority and must be assumed to have acted within the law, in the absence of any showing to the contrary. * * *"

In the absence of evidence to the contrary, it must be assumed that Kenneth Long, the title holder, was properly notified, and the Commission acted as provided by law.

The judgment of the trial court is reversed with directions to vacate the judgment previously entered and dismiss the action.

HALLEY, C. J., JACKSON, V. C. J., and DAVISON, WILLIAMS, BLACKBIRD, BERRY and HODGES, JJ., concur.

IRWIN, J., concurs in result.