**C.H. KUYKENDALL and H.G. Kuykendall, Appellants,**

**v.**

**HELMERICH & PAYNE, INC., a corporation, Appellee.**

**No. 56374.**

Supreme Court of Oklahoma.

June 16, 1987.

As Corrected June 29, 1987.

Rehearing Denied Sept. 16, 1987.

H.B. Watson, Jr., Lee K. Simpson, Watson, McKenzie & Moricoli, Oklahoma City, for appellants.

William G. Paul, Crowe & Dunlevy, Oklahoma City, for appellee.

HARGRAVE, Vice Chief Justice.

Upon certiorari having been previously granted to the Court of Appeals, petitioners-appellants C.H. and G.H. Kuykendall

present for consideration the appeal of a summary judgment in a quiet title action arising in the District Court of Grady County. The appellants alleged in their petition they were the owners of an undivided one-half mineral interest in the NW/4 of Section 7 T8N/R8W in Grady County and that an oil and gas lease held by the defendant-appellee, Helmerich & Payne, Inc., constituted a cloud upon their title. It was alleged this interest was no longer valid and subsisting and prayed the lease be adjudged expired under its terms, the cloud thereby removed and titled quieted in themselves.

The factual history involved here began with the execution of a lease by appellants on December 20, 1971. The lease contained a five year primary term ending December 20, 1976. Helmerich & Payne, Inc. became the record owner of this lease November 17, 1976, less than two months prior to expiration. On the expiration date there was no well drilled on the leased premises nor was the leased premises included in a drilling and spacing unit. Administrative proceedings begun during the lease term resulted in the creation of a drilling and spacing unit by the Corporation Commission including the leased premises on the day after the lease expired, December 21, 1976.

The record reflects diligent effort by the defendant-appellee, Helmerich & Payne, Inc., to obtain this spacing order. After learning the order was signed a day after the primary term, Helmerich & Payne, Inc. filed an application for an order nunc pro tunc transforming the order to be effective the date the hearing was held before the Commission's trial examiner, which was during the primary term of the lease. The motion for a nunc pro tunc order was granted and became the subject of an appeal, No. 51,039, *Kuykendall v. Corporation Commission*, 597 P.2d 1221 (Okl.App. 1979). There it was determined the nunc pro tunc order was not valid and the effective date of the unit stood as the day following expiration of the primary term.

In the plaintiff's petition the fact was stated that the lease expired at a date when there was no production from the leased premises nor was production on the premises excused by operation of law through production from a unit including the leased premises. Plaintiffs alleged the lease expired of its own terms and sought its removal as a cloud on their title. The trial court held, on summary judgment, that the defendant's lease was valid and subsisting, and denied plaintiffs' requested relief.

In ruling on the motion for summary judgment the trial court made extensive findings of fact and conclusions of law. The findings of fact include the existence of the lease, its assignment to Helmerich & Payne, Inc. (hereinafter H & P) dated November 17, 1976, the November 12, 1976 application to create a 640 acre unit in Section 7, and the fact that, as operator H & P commenced drilling the McClure No. 1 well in the NE/4 of Section 7 on December 3, 1976. On December 9, 1976 H & P's spacing application was heard (in the absence of other parties appearing) and the trial examiner recommended the application be granted. Pursuant to the recommendation, the Commission established all of Section 7 as a drilling and spacing unit for gas on December 21, 1976. At that time the McClure No. 1 was being diligently drilled in the NE/4 of Section 7—directly east of the Kuykendall quarter-section. It was contemplated this McClure No. 1 would be the unit well for the section.

In its conclusions of law the trial court found that commencement and diligent completion of the McClure No. 1, with the intention that it be the unit well for the section, coupled with the pendency of a spacing application (which the trial examiner had recommended be granted by the Commission), constituted commencement within the contemplation of the parties under the terms and conditions of the lease. The trial court additionally found that under 52 O.S.1971 § 87.1(d) (now 52 O.S.Supp. 1985 § 87.1(e), hereinafter referred to as § 87.1(e)) as long as the McClure No. 1 was being drilled diligently in the proposed unit, H & P was statutorily prohibited from drilling a second well into the same formation in the section. H & P was therefore pre-

vented from preserving the lease by drilling upon the leased premises. The court found the defendant was not required to seek an emergency application to drill a second well on the proposed unit because H & P's application contemplated as a matter of law that one well would drain the entire unit and thus commencement of a second well would have constituted waste, violating the one well, one unit principle of 52 O.S.1981 § 87.1(e). The pendency of the spacing proceeding coupled with the commencement and diligent drilling of the prospective unit well triggered the force majeure clause of the lease because H & P was statutorily prohibited from drilling a well on plaintiffs' land, thereby preventing strict compliance with the commencement and drilling covenants of the lease. The force majeure clause contemplated this situation and excused compliance with these covenants for the period the statutory prohibition existed; therefore the lease did not terminate during the pendency of the spacing application as long as diligent operations were being conducted upon the prospective unit and the well was not contemplated as a dry hole.

It is concluded that the trial court's judgment for the defendant in a summary proceeding was free of error under the uncontroverted facts in this proceeding in the light of applicable law.

The appellants urge the trial court erred in adjudging a refusal to quiet their title to the leasehold interest. In support of this thesis appellants present three main averments of error: (1) The lease expired for failure to drill on the premises or property spaced therein within the primary term; (2) H & P was not prohibited from drilling upon the leased premises so as to excuse its failure to commence; and (3) the Kuykendalls are not barred by laches or estoppel from quieting their title to the premises.

By virtue of the Court's resolution of this cause it is unnecessary to consider the propriety of ruling in a summary proceeding upon the issues of bar and estoppel. The remaining issues offered for reversal of the trial court's judgment are encompassed in the following analysis although not separately treated as presented in the briefing cycle.

The Kuykendall's lease, now held by H & P contains the following force majeure clause:

> All express or implied covenants of this lease shall be subject to all Federal and State Laws, Executive Orders, Rules and Regulations, and this lease shall not be terminated in whole or in part, nor lessee held liable in damages, for failure to comply therewith, if compliance is prevented by, or such failure is the result of any such Law, Order, Rule or Regulation.

The appellant takes the position that the force majeure clause is inapplicable to the situation presented in this appeal and that the failure to drill is not excused by the clause. The impediment which the appellee asserts prohibited drilling upon appellants' leased premises is statutory and resides in § 87.1(e), *supra.* It is asserted that the filing of a spacing application suspended the lessee's right to drill on the lease. Appellee contends that the statutory drilling ban itself suspends the possibility of cancellation for failure to drill as a matter of law. It is also argued that the force majeure clause, as a matter of private contract, suspends the duty to drill under these facts. The applicable portion of § 87.1(e), *supra,* provides:

> The drilling of any well or wells into any common source of supply for the purpose of producing oil or gas therefrom, after a spacing order has been entered by the Commission covering such common source of supply, at a location other than that fixed by said order is hereby prohibited. The drilling of any well or wells into a common source of supply, covered by a pending spacing application, at a location other than that approved by a special order of the Commission authorizing the drilling of such a well is hereby prohibited....

The parties to this appeal agree that a lease is extended past its primary term when there is production from any portion of the pooled acreage satisfying the requirements of the thereafter clause of the

lease, as established in *State v. Carter Oil Company of West Virginia,* 336 P.2d 1086 (Okl.1959) and *Layton v. Pan American Petroleum Corporation,* 383 P.2d 624 (Okl.1963). There it was stated that this resulted from the legal effect of the pooling order upon the thereafter clause. It is also true that the lease will be extended when the well satisfying the thereafter clause is not completed until after the primary term expires where the lease requires a well to be *commenced* within the primary term (as distinguished from completed). *Rein v. Humble Oil & Refining Co.,* 400 P.2d 800 (Okl.1965). This analysis and its result is independent of the force majeure provisions of a lease contract as demonstrated by the decision in *Sunray DX Oil Co. v. Cole,* 461 P.2d 305 (Okl.1969), cert. denied 396 U.S. 907, 90 S.Ct. 223, 24 L.Ed.2d 183. There it was determined that drilling and completion of a successful well on the same unit but not on the leased premises relieves the lessee from paying further delay rentals. This conclusion was reached even though the lease under consideration contained a force majeure paragraph which was stricken from the lease contract. There the applicability of such a provision would have been questionable. The Commission's spacing order did not interfere with the lessee's ability to pay delay rental to perpetuate the lease. In *Sunray DX Oil Co. v. Cole, supra,* plaintiffs urged cancellation of the lease stating the lease prohibited pooling in units greater than 40 acres. A regulatory provision was stricken from the lease in order to insure strict compliance with this limitation. Plaintiff contended that order of the Commission could not be used as a defense to noncompliance with the lease terms inasmuch as the spacing order was obtained at defendants' request and they are estopped to set it up as a defense to noncompliance to the lease terms. The Court held the defendants were not required to pay delay rentals to keep the lease in force as under the authority of *Oklahoma Natural Gas v. Long,* 406 P.2d 499 (Okl.1965), which in turn relies on *Layton v. Pan American Petroleum Corporation, supra.* It is the legal effect of the order of the Commission stating that not more than one well may be drilled, followed by the completion of a commercial well on land within the spacing unit, that combine to satisfy the provisions of the lease. The continuation of the lease is a result of the effect of the spacing order and the drilling of a well on the unit, which combine to extend the lease. There is no reliance in these decisions on the defense to cancellation for nonproduction provided by the lease contract's force majeure clause.

In this cause the focus on 52 O.S. 1981 § 87.1(e) is directed to that portion of the statute pertaining to pending spacing orders. The statute now prohibits drilling into a pending unit. Although on its face this prohibition is not absolute through provision for issuance of emergency orders, the intent that only one well be drilled to a common source on a unit remains. The prohibition from drilling in a unit at a location other than that fixed by the Commission is the statutory basis for this one unit one well principle. In order to enforce this principle the prohibition has been extended to proposed units where the application for a drilling and spacing unit is pending. Where one well can effectively drain a unit, to drill additional wells would constitute waste. It is necessary and expedient to suspend the drilling of additional wells while an application is before the Commission which alleges one well will effectively drain the unit. The statutory suspension of drilling rights during pendency of applications for a unit assures additional wells will not be wastefully drilled prior to the Commission's determination that a single well will drain the unit. Appellants' contention the terms of the lease could have been met by seeking an emergency order to drill the second well under the terms of the statute are not well founded. The application for a unit states the proposed unit is underlain by a common source and that one well will adequately drain the unit. Such allegations are essential to the proper application for a unit. Given this, one cannot conclude that the lessee was bound to seek an emergency order to drill an additional well during the pendency of the unit

order application. To do so would require the applicant to deny the allegations in his unit application; that one well would sufficiently drain it. Thus the lessee was effectively prevented from drilling the second well on lessors' property during the pendency of the drilling and spacing unit application's pendency.

This revocation of the lessee's right to drill restricts all owners of that right in the proposed unit in the same manner as if the unit were finally formed.

In *Ward v. Corporation Commission,* 501 P.2d 503 (Okl.1972), this Court noted that withdrawing an owner's right to drill without granting the right to participate in the proceeds of the unit well amounted to the taking by the state of owner's property without due proces under teachings of *Thompson v. Consolidated Gas Utilities Corp.,* 300 U.S. 55, 57 S.Ct. 364, 81 L.Ed. 510. The pertinent passage from *Ward, supra,* recites:

> ... At the time the unit is established a unit well is or probably soon will be producing oil or gas. At the moment production commences, resulting pressure differentials in the common source of supply portend, in greater or less degree, drainage from all parts of the unit toward the producing unit well. This drainage is occurring from areas where oil and gas lessees are prohibited from doing anything to protect their leased premises from drainage. With the purpose of § 87.1 to prevent the drilling of unnecessary wells before it, the Commission will not, except in extreme cases, make an exception to the rule that permits one producing well only on each spacing (drilling) unit. To impose this denial without granting the right to participate in production of the unit well, as of the time the non-drilling owners were prohibited from drilling, is the taking by the State of their property without due process in violation of the Fourteenth Amendment to the Constitution of the United States. *Thompson v. Consolidated Gas Utilities Corp.,* 300 U.S. 55, 57 S.Ct. 364, 81 L.Ed. 510....

For purposes of this analysis the critical point in the above quoted language is that once the denial of the right to drill is operative the owners must be granted the right to participate in the production of the unit well. Under the provisions of § 87.-1(e) the right to drill is withdrawn at the time the application is filed with the Commission and thus the right to participate in the unit well arises at that time.

Although *Ward, supra,* clearly states that the right to participate in production must arise at the time the non-drilling owners were prohibited from drilling, the case also contains a statement of law that conflicts with that language under § 87.1(e) as it reads presently. Referring to *Wood Oil Co. v. Corporation Commission,* 205 Okl. 537, 239 P.2d 1023 (1950), the Court noted in *Ward, supra,* at p. 506, " 'To the extent the order [of the Commission] holds Wood Oil accountable to Toklan directly or indirectly for a share in the production before the spacing [drilling] unit was *created* same is not authorized by law and it was error to so hold.' " (emphasis added) The distinction arises from the fact that *Wood Oil Co. v. Corporation Commission, supra,* was decided under 52 O.S.Supp.1945 § 87.1(d). There the statute prohibited only the drilling of a well or wells into a common source of supply after a spacing order has been entered. There was no prohibition against drilling into a common source where a spacing application is pending. Where there was no interference with the right to drill during pendency of an application there needed to be no mandate for participation in production. As noted the statute now (from and since 52 O.S. Supp.1947 87.1(d)) prohibits drilling in a pending unit, and of necessity by virtue of that prohibition, there is an accompanying right to share in any production acquired from the proposed unit well during the pendency of a spacing application.

The often recited tenet that owners of an interest in the oil and gas of a drilling and spacing unit share in the production of the unit well as of the time the unit is established is found in *Ward, supra,* at p. 507. There it is stated that result is necessary to give § 87.1 a construction that meets the

constitutional requirements of due process consistent with the Wood Oil Cases, Numbers 2 and 3, *Wood Oil Co. v. Corporation Commission,* 205 Okl. 537, 239 P.2d 1023 (1950) and *Wood Oil Co. v. Corporation Commission,* 268 P.2d 878 (Okl.1954). Referring to Wood Oil No. 2, *Wood Oil Co. v. Corporation Commission, supra,* at 1026, for the basis of the statement, this Court found that the Commission has the power to compel the owners of a tract to account for production from and after the Commission has applied the power of the State in furtherance of conservation. This analysis is gleaned from the following language in Wood Oil Co. No. 2, *Wood Oil Co. v. Corporation Commission, supra,* 239 P.2d at 1026. The conclusion is reached by reference to the italicized portion of the quote:

> The contention upon the question of jurisdiction is thus stated: "That neither Section 87, Title 52, C.S.Statutes of 1945, or Subdivision E thereof, grants or confers, directly or indirectly, any power, jurisdiction or authority upon the Corporation Commission to compel, by order or otherwise, the owner of a developed and producing tract after the same has been developed and included within a spacing unit, along with an unleased and undeveloped separately owned tract, to account to the owner of the unleased and undeveloped separately owned tract for any part of the oil produced from the ⅞ths working interest of his separately owned developed leasehold estate."
>
> This contention is broad enough to cover the production had after as well as that had before establishment of the spacing unit that includes the well and it was so intended. As the basis therefor it is urged that with the discovery and initial production there obtained a vested right in Wood Oil to continue to produce from the well for its sole use and benefit. To the extent that it has reference to production had before *the application of the power of the State in furtherance of conservation* the contention is sound. But to the extent it has application to *production had after the exercise of such power it is unsound.* The law determinative of the right of the producer and its subordination to the police power of the State is thus declared in *Champlin Refining Company v. Corporation Commission of the State of Oklahoma,* 286 U.S. 210, 52 S.Ct. 559, 564, 76 L.Ed. 1062, 86 A.L.R. 403: ... (emphasis added) .

Under § 87.1(e), as it now reads, the power of the State in furtherance of conservation is exercised at the time an application is filed and becomes pending. For at this point, and by this act, the authority of the legislature has decreed that the power to drill is suspended. Once the power of the State is invoked in the name of conservation of oil and gas the Commission has the power to regulate the drilling of wells into the common source of supply and distribute the production thereof among the owners of mineral rights in lands *overlying* the common source of supply. *Patterson v. Stanolind Oil & Gas Co.,* 182 Okl. 155, 77 P.2d 83 (1938), appeal dismissed, 305 U.S. 376, 59 S.Ct. 259, 83 L.Ed. 231.

The combination of the commence clause in the lease and the statutory provisions of § 87.1(e) for formation of a drilling and spacing unit have the legal effect of continuing a lease where drilling is commenced to the common source of supply named in a pending drilling and spacing application if the well so commenced is completed as a producing well.

The plaintiffs were not entitled to have the lease removed as a cloud on their title and the trial court properly refused to quiet the title to their land by removing it.

Inasmuch as the trial court so held in a portion of the judgment issued here, the judgment is free from error.

JUDGMENT AFFIRMED.

DOOLIN, C.J., and HODGES, LAVENDER, SIMMS, OPALA, WILSON and KAUGER, JJ., concur.

SUMMERS, J., concurs in result.