LAWSON v. CITIZEN ENERGY II



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:LAWSON v. CITIZEN ENERGY II

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 LAWSON v. CITIZEN ENERGY II
2021 OK CIV APP 1
481 P.3d 287
Case Number: 117799
Decided: 04/07/2020
Mandate Issued: 01/07/2021
DIVISION I
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION I
Cite as: 2021 OK CIV APP 1, 481 P.3d 287

 
APPROVED FOR PUBLICATION BY THE SUPREME COURT. 

 

HAROLD LAWSON, TRUSTEE OF THE HAROLD LAWSON LIVING TRUST, Plaintiff/Appellant,
v.
CITIZEN ENERGY II, LLC, AN OKLAHOMA LIMITED LIABILITY COMPANY AND ROAN RESOURCES, LLC, A DELAWARE LIMITED LIABILITY COMPANY, Defendants/Appellees.

APPEAL FROM THE DISTRICT COURT OF
CANADIAN COUNTY, OKLAHOMA

HONORABLE PAUL HESSE, TRIAL JUDGE

AFFIRMED

A. Gabriel Bass, Jana L. Knott, BASS LAW, Oklahoma City, Oklahoma, for Plaintiff/Appellant,

Travis P. Brown, John Paul Albert, Lincoln C. Hatfield, MAHAFFEY & GORE, P.C., Oklahoma City, Oklahoma, for Defendants/Appellees.

BRIAN JACK GOREE, JUDGE:

¶1 Harold Lawson, Trustee of the Harold Lawson Living Trust, Plaintiff/Appellant, (Owner) appeals summary judgment granted in favor of Citizen Energy II, LLC, and Roan Resources, LLC, Defendants/Appellees. (Operator). Owner seeks to quiet title in certain property that is the subject of an oil and gas lease. The parties dispute whether the lease expired.

I. Background

¶2 On June 9, 2014, Harold Lawson entered an oil and gas lease covering approximately 320 acres in the NW/4 and SE/4 of Section 11, Township North, Range 6 West (Lawson Lease). The Corporation Commission spaced Section 11, the governmental section consisting of 640 acres more or less, as a horizontal drilling and spacing unit.[1] Later, the Lawson Lease was pooled with other acreage in Section 11 to create a 640-acre horizontal drilling and spacing unit.[2] On the same date by different Commission Order, Section 14, the governmental section immediately south of Section 11, was pooled as a separate horizontal drilling and spacing unit.[3] Pursuant to 52 O.S.Supp.2014 §87.8(C) and Commission rules, Operator filed its application for a multi-unit horizontal well with the completion interval in two units, Section 11 and Section 14. The application provided for the determination of the surface location at a later date. In May 2017, the Commission granted Operator's application for the multi-unit horizontal well.

¶3 Operator commenced to drill a well, the McWhirther 1H-14-11, from a surface location in the southeast quarter of Section 14 intending to drill a horizontal lateral from south to north, eventually penetrating Section 11. The lateral did not penetrate the Section 11 unit until after the expiration of the Lawson Lease's primary term, three (3) years. However, commencement operations for the drilling of the McWhirther well occurred on the Section 14 unit before the expiration of the Lawson Lease's primary term.

¶4 The parties dispute whether these operations in the Section 14 unit satisfied the commencement of drilling clause in the Lawson Lease. On review, we must determine whether Operator is entitled to summary judgment, that is, whether Owner's leased acreage included in the Section 11 unit was extended into its secondary term as a matter of law by commencement activities off-unit in Section 14. This requires interpretation of the Lawson Lease, the relevant statutes, and administrative rules.

II. Standard of Review

¶5 The appellate standard of review for summary judgment is de novo. Carmichael v. Beller, 1996 OK 48, ¶2, 914 P.2d 1051, 1053. De novo review involves a plenary, independent and non-deferential examination of the trial court's rulings of law. In re Estate of Bell-Levine, 2012 OK 112, ¶5, 293 P.3d 964. Further, questions concerning statutory interpretation are questions of law subject to do novo review. Fulsom v. Fulsom, 2003 OK 96, ¶2, 81 P.3d 652. The primary goal of statutory interpretation is to ascertain and to apply the intent of the Legislature that enacted the statue. Samman v. Multiple Injury Trust Fund, 2001 OK 71, ¶13, 33 P.3d 302. It is presumed that the Legislature expressed its intent in the statute's language and that it intended what it so expressed. McClure v. ConocoPhillips Co., 2006 OK 42, ¶12, 142 P.3d 390.

III. Analysis

¶6 Oil and gas leases are contracts and are interpreted to give effect to the mutual intention of the parties. Cronkhite v. Falkenstein, 1960 OK 118, ¶¶4-5, 352 P.2d 396, 398. Words in a contract are generally understood in their ordinary sense and not the strict legal meaning. Id., ¶8. Additionally, "the right of the legislative branch to act under the police power is part of the existing law at the time of the execution of every contract, and as such becomes in contemplation of law a part of the contract." Edmondson v. Pearce, 2004 OK 23, ¶28, 91 P.3d 605. Well-spacing regulations are a valid exercise of the State's police power in interest of conservation and protection of the correlative rights of owners in a common source of supply. Patterson v. Stanolind Oil & Gas Co., 1938 OK 138, ¶¶14-15, 77 P.2d 83, 87-88.

¶7 Owner takes the position that the literal terms of the Lawson Lease must be satisfied in order to perpetuate the lease into the secondary term. The lease provides that the lessee must "commence to drill a well . . . within the term of the lease . . . or on acreage pooled therewith." Owner contends Operator must physically enter and commence drilling on the leased premises or acreage pooled therewith within the primary term of the lease. Operator counters that physical entry upon the leased premises or acreage pooled therewith is not required, and that commencement of drilling in Section 14 was sufficient to extend the Lease. The commencement clause provides:

If the lessee shall commence to drill a well or commence reworking operations on an existing well within the term of the lease or any extension thereof, or on acreage pooled therewith, the lessee shall have the right to drill such well to completion or complete reworking operations with reasonable diligence and dispatch, and if oil or gas, or either of them, be found in paying quantities, this lease shall continue and be in force with like effect as if such well had been completed within the term of years first mentioned."

¶8 The Oklahoma Supreme Court has interpreted "commence to drill" language in an oil and gas lease to mean something less than actual spudding of a well, absent specific language in the lease to the contrary. Kuykendall v. Helmerich & Payne, Inc., 1987 OK 51, ¶12, 741 P.2d 869, 871-72. Pre-drilling surface activities have been held sufficient to satisfy a commencement clause. See Cromwell v. Lewis, 1923 OK 1028, 223 P. 671. The spudding of the McWirther well in the Section 14 unit would satisfy the Court's interpretation of "commence to drill" language in a lease.[4]

¶9 All agree that Section 14 is not within the legal description of the leased premises. The real issue is whether commencement operations to drill on the Section 14 unit satisfies the commencement clause of the Lawson Lease, which contemplates drilling on acreage pooled with the Section 11 unit. In Oklahoma, no appellate court has addressed commencement operations on acreage off-unit, that is, property not included in an existing spacing unit or included in a pending application for a drilling and spacing unit.[5] This presents an issue of first impression.

¶10 Kuykendall v. Helmerich & Payne, Inc., 1987 OK 51, 741 P.2d 869, addressed the legal effect of a spacing application on an oil and gas lease. In that case, at the end of the primary term, no well had been drilled on the leased premises nor the leased premises included in a drilling and spacing unit. The leased premises was, however, included in a pending spacing application in which a well had been commenced which was intended to be the unit well. One of the purposes of the Commission's authority to establish spacing units and the prohibition of drilling into a pending unit is to reduce waste. Kuykendall, ¶13. The Legislative intent was that one well be drilled to a common source on a unit. Id. "Where one well can effectively drain a unit, to drill additional wells would constitute waste." Id. The Kuykendall Court held that the commence clause of the lease and the statutory provisions had the legal effect of continuing the lease where drilling was commenced to the common source of supply named in the application. Id., ¶20.[6]

¶11 Since Kuykendall in 1987, drilling technologies have developed and the Oklahoma Legislature responded in turn. Statutory provisions are incorporated into a lease by operation of law;[7] therefore review of the statutes is necessary to interpret the Lawson Lease. In this case, the Corporation Commission authorized a multi-unit horizontal well for Section 11 and Section 14, two separately spaced and pooled units. The Commission's authority to regulate horizontal drilling in Oklahoma stems from the Legislature's enactment of the 2011 Shale Reservoir Development Act (Act). 52 O.S.2011 §87.6 et seq.[8] In its 2001 Session Laws, The Legislature expressed the following (uncodified) statement of intent:

The Legislature finds that advances in horizontal drilling techniques for wells drilled and completed in shale formations in Oklahoma have advanced beyond the historical statutory spacing scheme found in Section 87.1 and Sections 287.1 through 287.15 of Title 52 of the Oklahoma Statutes, in particular with the use of extended length laterals. The Corporation Commission, as the agency charged with the protection of the correlative rights of those owning oil and gas interests in this state, the prevention of waste and the promotion of development of these Oklahoma resources, is constrained in its ability to adequately accomplish these goals by the limitations placed upon it by the existing statutory scheme. In order to prevent waste, better protect the correlative rights of the owners of oil and gas minerals interests and harmonize the historical regulatory scheme of our state with the expanding technology of drilling and completing horizontal wells in shale reservoirs in this state, the Legislature finds it necessary to modify the oil and gas regulatory scheme in Oklahoma as set forth in this act.

2011 Shale Reservoir Development Act, 2011 Okla. Sess. Laws, ch. 54, §1. (Emphasis added).

¶12 Our Legislature acknowledged that Oklahoma's historical drilling and spacing unit rules were incongruous with the advances being made in different drilling technologies, especially extended length laterals used in horizontal drilling. As part of the Act, the Commission was granted the authority to permit two types of horizontal wells: "a multiunit horizontal well in conformity with Section 4 [now codified at 52 O.S. §87.8] of this act, or to create a horizontal well unitization in conformity with Section 5 [now codified at 52 O.S. § 87.9] of this act . . . ." 52 O.S.2011 §87.7.

¶13 Section 87.8 specifically authorizes multi-unit horizontal wells, which as the words suggest, means a well with the completion interval in two or more units producing from the same shale reservoir. See 52 O.S. Supp.2014 §87.6(B)(10). Significantly, the statute provides that "[a] multiunit horizontal well shall be treated as a well in each of the affected units and shall be subject to all of the rules otherwise applicable to any other well in any of the affected units." §87.8(B)(3). We think this language is unambiguous. It is presumed that the Legislature expressed its intent in the statute's language and that it intended what it so expressed. McClure v. ConocoPhillips Co., 2006 OK 42, ¶12, 142 P.3d 390. "Affected" is defined as "attached to," "deliberately chosen," "aimed at."[9] An application pursuant to §87.8 must include the anticipated location of the proposed multi-unit horizontal well to be drilled in each affected unit and directs how to calculate costs, production, and proceeds based on the allocation factor after completion. 52 O.S.Supp.2014 87.8(B). "Affected unit" as used in the statute contemplates a unit included in a multi-unit horizontal well application and those units actually penetrated within the completion interval of the well.

¶14 The multi-unit horizontal well targets a common source of supply in a shale formation and any associated common source of supply. 52 O.S. Supp.2014(B)(14). Operator's application for the multi-unit horizontal well alleges that the Woodford common source of supply, a shale formation, and the Mississippian common source of supply, an associated common source of supply per 52 O.S.Supp.2014 §87.6, underlie Sections 11 and 14. The application proposes to drill a horizontal well with an extended length lateral to underlie both sections and requests the Commission allocate costs, commingled production, and proceeds based on the respective length of the interval in each section.[10] Sections 11 and 14 are affected units. Therefore, a multi-unit horizontal well drilled in the Section 14 unit is treated as a well in the Section 11 unit. Commencement operations in the Section 14 unit during the Lease's primary term extended the Lease as a matter of law, provided the well so commenced is completed as a producing well.

IV. Conclusion

¶15 The legislative findings coupled with the plain language of §87.8(B)(3) demonstrate the Legislature's intent to modernize historical spacing and drilling regulations given the advancement of horizontal drilling. Using extended laterals allows for efficient production which helps eliminate waste. The multi-unit horizontal well in this case contemplates one surface location for the well with an extended lateral into other units per §87.8. This comports with the Legislative intent and the Commission's directive to reduce waste and protect the correlative rights of owners. Section 87.8(B)(3) directs that a multi-unit horizontal well is treated as a well in any affected unit. Because of this, commencement activities in the Section 14 unit are treated as commencement activities in the Section 11 unit and the Lease is perpetuated into its secondary term as a matter of law. The Judgment is affirmed.

BELL, P.J., and BUETTNER, J., concur.

FOOTNOTES

[1] Commission Order 659383 dated December 29, 2016.

[2] Commission Order 662033 dated March 20, 2017.

[3] Commission Order 662034 dated March 20, 2017.

[4] Form 1001A Notification of Well Spud reports that the spud date of the McWirther well was May 29, 2017.

[5] Other jurisdictions have considered the precise issue, but because of the nature of Oklahoma's oil and gas regulatory scheme, no case is directly on point. See A & M Oil, Inc. v. Miller, 11 Kan.App.2d 152, 715 P.2d 1295 (Kan. Ct. App. 1986); Manzano Oil Corp. v. Chesapeake Operating, Inc., 178 F.Supp.2d (D.N.M. 2001); Neuhard v. Range Resources-Appalachia, LLC, 29 F.Supp.3d 461 (M.D. PA 2014).

[6] The Court's holding was not based on application of the lease's force majeure clause.

[7] Okla. Nat. Gas Co. v. Long, 1965 OK 153, ¶20, 406 P.2d 499, 504.

[8] It was later amended as the Extended Horizontal Well Development Act.

[9] Meriam-Webster, A., Webster's Third New International Dictionary 35 (Philip Babcock Gove, Ph.D. et al. eds., Merriam Webster Inc. 1986)(1961).

[10] Attached to the application is Exhibit B, a map, which details the existing wells and diagrams the proposed location of the multi-unit horizontal well to run along the western side through sections 11 and 14.






 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1987 OK 51, 741 P.2d 869, Kuykendall v. Helmerich & Payne, Inc.
Discussed at Length
 1938 OK 138, 77 P.2d 83, 182 Okla. 155, PATTERSON v. STANOLIND OIL & GAS CO.
Discussed
 2001 OK 71, 33 P.3d 302, 72 OBJ 2703, SAMMAN v. MULTIPLE INJURY TRUST FUND
Discussed
 1960 OK 118, 352 P.2d 396, CRONKHITE v. FALKENSTEIN
Discussed
 1965 OK 153, 406 P.2d 499, OKLAHOMA NATURAL GAS COMPANY v. LONG
Discussed
 1923 OK 1028, 223 P. 671, 98 Okla. 53, CROMWELL v. LEWIS
Discussed
 2003 OK 96, 81 P.3d 652, FULSOM v. FULSOM
Discussed
 2004 OK 23, 91 P.3d 605, EDMONDSON v. PEARCE
Discussed
 2006 OK 42, 142 P.3d 390, MCCLURE v. CONOCOPHILLIPS COMPANY
Discussed at Length
 1996 OK 48, 914 P.2d 1051, 67 OBJ 1173, Carmichael v. Beller
Discussed
 2012 OK 112, 293 P.3d 964, IN THE MATTER OF THE ESTATE OF BELL-LEVINE
Discussed
Title 52. Oil and Gas
 Cite
Name
Level

 52 O.S. 87.6, Short Title - Definitions
Discussed at Length
 52 O.S. 87.7, Corporation Commission Jurisdiction
Cited
 52 O.S. 87.8, Ownership of Multiunit Horizontal Well - Allocation of Costs - Commingled Production - Proceeds - Application
Discussed
 52 O.S. 87.9, Horizontal Well Unitization for Targeted Reservoirs - Prerequisites - Size of Unit - Ownership of Rights within Unit - Plan of Development - Order - Consent - Notice
Cited


 
 








 
 
 
 

 
 




 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA