John E. SMICKLAS, Robert W. Moore and Lynn D. Moore, Husband and Wife, and Bill K. Reed and Dorothy A. Reed, Husband and Wife, Appellants,

v.

Frederick J. SPITZ, Appellee.

Nos. 71897, 72319 and 72585.

Supreme Court of Oklahoma.

Oct. 20, 1992.

Rehearing Denied March 2, 1993.

Stanley M. Ward, Gary W. Gardenhire, Gary W. Williams, Norman, for appellants.

Ben L. Burdick, Kelley C. Callahan, Arthur F. Hoge, III, Oklahoma City, for appellee.

KAUGER, Justice:

Three issues are presented: 1) whether a private citizen may seek abatement of a public nuisance based solely upon the violation of a municipal ordinance;[1] 2) whether a jury instruction indicating that a landowner along a waterway may construct dikes, embankments or other structures to maintain, protect, and restore the property to its original condition adequately reflects Oklahoma law;[2] and 3) whether an expert witness may be impeached with sworn testimony given in a prior unrelated case. We find that: 1) A declaration that an activity is a public nuisance violating a city ordinance will not justify, in and of itself, granting a private party an injunction. Pursuant to 50 O.S.1991 § 10,[3] an individual may maintain an action to abate a public nuisance only if it is specifically personally injurious; 2) An instruction on the rights of riparian land owners containing no limiting language concerning actions that may be taken to protect property is defective; and 3) An expert witness may be impeached with sworn testimony given in a prior unrelated case if the testimony is relevant and if it tends to explain, contradict or discredit the witness's testimony. Here, the expert's prior inconsistent statements concerning river mechanics are admissible.

## FACTS

All parties own land adjacent to the South Canadian River (river) in Cleveland or McClain counties. The appellants, John E. Smicklas, Robert W. Moore and Lynn D. Moore, Bill K. Reed and Dorothy A. Reed (collectively, Smicklas), own land on the south bank of the river across or downstream from the appellee, Frederick J. Spitz (Spitz). Spitz obtained the westernmost portion of his property abutting the river in 1978. Earthwork on this eighty-acre track and subsequent flooding of the Smicklas property gave rise to the instant cause.

It is agreed that Spitz conducted two earthwork projects. The first is referred to as the west road/bank stabilization project. This project is located on the west boundary of the Spitz property along the riverbank. The second project is located on the north side of Spitz's property. This work was undertaken to extend main street to the Spitz farm. The extent of the earthwork Spitz performed is sharply contested. Smicklas refers to the earthwork as dikes. He presented testimony indicating that: 1) the dikes were constructed some two to six feet above the property's natural elevation; 2) during high water stages on the river, the dikes caused increased flooding and erosion to his property; and 3) the existence of the dikes would cause future damage to his property. Spitz characterizes the same earthwork as roads constructed by leveling the natural terrain of the land with an application of clay to the road surface to allow their use. He admits that he placed rip-rap along the earthwork abutting the river to stabilize his bank and prevent erosion of his land and damage to structures erected on the real property. He also concedes that in working on the main street project, he raised the elevation of the road approximately four feet. However, he insists that this was done in con-

---

1. The City of Norman (City) filed a separate action to have the Spitz earthwork declared a nuisance and abated. The cause was tried in conjunction with the Smicklas suit. At the close of evidence, Smicklas and the City requested a directed verdict on the issue of abatement. The trial court denied Smicklas's motion, but it sustained the City's. On appeal, the Court of Appeals in *City of Norman v. Frederick J. Spitz* (No. 72,861, Aug. 20, 1991) found that both the City and Spitz had been ordered to abate the nuisance and remanded the cause for a determination of the obligations of both parties.

2. Spitz's jury instruction on the issue of riparian rights provides:

"You are instructed that the owner of land on a river may construct dikes, embankments or other structures to:

(1) maintain his bank in its original place or condition;

(2) protect his bank from the effects of erosion or floods;

(3) restore his bank to its original condition if it has been eroded or damaged by the river."

3. Title 50 O.S.1991 § 10 provides:

"A private person may maintain an action for a public nuisance if it is specifically injurious to himself, but not otherwise."

junction with an agreement with officials from Cleveland County. Spitz presented expert testimony indicating that the earthwork was not the cause of the damage suffered by Smicklas.

On July 24, 1987, Smicklas filed suit requesting injunctive relief and money damages. The City of Norman (City) filed a separate action to have the Spitz earthworks declared a nuisance and abated.[4] The City had previously declared the earthworks to be a public nuisance erected in violation of a city ordinance.[5] The ordinance, requiring a permit for construction in waterways,[6] was adopted to protect residents from flooding.[7] The Smicklas and City suits were consolidated and tried before a jury on September 19–21, 1988. At the close of the evidence, Smicklas and the City requested a directed verdict ordering abatement. The trial court denied Smicklas's motion and submitted the cause to the jury. The trial court reserved a ruling on the City's motion which was later sustained.[8]

During trial, Spitz presented expert testimony that his earthwork did not affect the deflection of the river's flow or the flooding of the Smicklas property. Smicklas attempted to impeach the expert by presenting his prior sworn testimony in a case also related to flooding of the river. Spitz's objection to this line of questioning was sustained after the trial court examined the deposition in which the contradictory testimony appeared. At the close of evidence, jury instructions were submitted to the trial judge. Smicklas objected to the jury instruction relating to the rights of riparian land owners as being inconsistent with Oklahoma law. He argued that the instruction presented only the rights of the land owner and did not describe the land owner's corresponding responsibilities. The jury found in favor of Spitz. The Court of Appeals affirmed.[9] It held that: 1) a resolution declaring conduct in violation of an ordinance a public nuisance was not determinative as to the existence of a private nuisance subject to abatement; 2) the instruction defining riparian rights fairly represented the applicable law; and 3)

**4.** Title 50 O.S.1991 § 17 provides in pertinent part:

"In cases where it is deemed impractical summarily to abate any such nuisance such city or town may bring suit in the district court of the county in which such nuisance is located, and it is hereby made the duty of the governing body of any such city or town, by the adoption of a resolution to direct the bringing of suit in the proper court for the purpose of abating any such nuisance...."

**5.** Title 50 O.S.1991 § 16 provides:

"Cities and towns in this state shall have the right and power to determine what is and what shall constitute a nuisance within their respective corporate limits, and for the protection of the public health, the public parks and the public water supply, shall have such power outside of the corporate limits; and wherever it is practical so to do, said cities and towns shall have the power summarily to abate any such nuisance after notice to the owner, and an opportunity for him to be heard, if this can be given."

**6.** Norman City Ordinance 0–7475–48 § 429.1(5) (1975) provides in pertinent part:

"Flood Plain Permits are required for uses which must receive special attention to prevent obstruction of floodways, threats to other lands from floating debris, and substantial damage to the uses themselves. Uses listed

above requiring a Flood Plain Permit may be allowed only upon issuance of a special permit by the unanimous determination of the Flood Plain Permit Committee composed of the Director of Planning, City Engineer, and the Building Official...."

Although § 429.1(5) has been amended a number of times since 1975, its current version is almost identical to the quoted passage.

**7.** Norman City Ordinance No. 0–7475–48 § 429.-1(1) (1975) provides in pertinent part:

"... To secure this protection from flooding, the objectives of this section are to assure the retention of sufficient floodway area to convey flood flows; to designate a minimum flood protection elevation; to reduce the height and violence of floods insofar as such are increased by artificial obstruction; and to assure the proper floodproofing of structures subject to flooding."

Although § 429.1(1) has been amended a number of times since 1975, its current version is almost identical to the quoted passage.

**8.** See discussion, note 1, supra.

**9.** The Court of Appeals also affirmed an award of attorney's fees and costs. However, it reversed the trial court's order allowing interest on the attorney's fee award. Neither of these issues are before the Court.

an expert witness may not be impeached by using deposition testimony given in an unrelated case. We granted certiorari on March 2, 1992.

### I.

### A DECLARATION THAT AN ACTIVITY IS A PUBLIC NUISANCE VIOLATING A CITY ORDINANCE WILL NOT JUSTIFY, IN AND OF ITSELF, GRANTING A PRIVATE PARTY AN INJUNCTION. PURSUANT TO 50 O.S.1991 § 10, AN INDIVIDUAL MAY MAINTAIN AN ACTION TO ABATE A PUBLIC NUISANCE ONLY IT IS SPECIFICALLY PERSONALLY INJURIOUS.

■ Smicklas asserts that because the earthworks violate a city ordinance,[10] they are a nuisance *per se* pursuant to 50 O.S. 1991 § 1.[11] He insists that the nuisance is abatable absent any showing of special injury. Spitz argues that when a private person seeks abatement of a public nuisance, it must be shown that the injury is specifically injurious to the person's rights before an injunction will issue. We agree.

Smicklas finds support in the reference in 50 O.S.1991 § 1 to unlawful interference with a waterway. He relies upon § 1 for the proposition that once a use has been declared a public nuisance in violation of a city ordinance, it is "unlawful" within the meaning of § 10. Smicklas argues that the "unlawful" activity is a nuisance *per se* under § 10 subject to abatement by an individual. This position is unsupported either by statutory enactment or by case law.

■ The determination of legislative intent controls statutory interpretation.[12] The intent is ascertained from the whole act in light of its general purpose and objective.[13] However, it is unnecessary to apply rules of statutory construction if the legislative will is clearly expressed.[14] Section 10 of Title 50 provides:

"A private person may maintain an action for public nuisance **if it is specifically injurious to himself but not otherwise.**" (Emphasis supplied.)

In *Texas Co. v. Brandt,* 79 Okl. 97, 191 P. 166, 169 (1920), this Court held that when a party seeks an injunction based upon the violation of a municipal ordinance, the facts and circumstances must be shown which support abatement.[15] Section 10 clearly provides that a private person may maintain an action for abatement if it is specifically injurious to the individual, but not otherwise. A declaration that an activity is a public nuisance violating a city ordinance

---

10. It is undisputed that Spitz did not obtain a permit as required by Norman City Ordinance 0–7475–48 § 429.1(5) (1975), see note 6, supra.

11. Title 50 O.S.1991 § 1 provides:
"A nuisance consists in unlawfully doing an act, or omitting to perform a duty, which act or omission either:
First. Annoys, injures or endangers the comfort, repose, health, or safety of others; or
Second. Offends decency; or
Third. Unlawfully interferes with, obstructs or tends to obstruct, or renders dangerous for passage, any lake or navigable river, stream, canal or basin, or any public park, square, street or highway; or
Fourth. In any way renders other persons insecure in life, or in the use of property, provided, this section shall not apply to preexisting agricultural activities."

12. *Fuller v. Odom,* 741 P.2d 449, 452 (Okla.1987); *Matter of Phillips Petroleum Co.,* 652 P.2d 283, 285 (Okla.1982); *Becknell v. State Indus. Court,* 512 P.2d 1180, 1183 (Okla.1973).

13. *Earnest, Inc. v. LeGrand,* 621 P.2d 1148, 1151 (Okla.1980); *Midwest City v. Harris,* 561 P.2d 1357–58 (Okla.1977).

14. *Fuller v. Odom,* see note 12, supra; *Duesterhaus v. City of Edmond,* 634 P.2d 720, 722 (Okla.1981).

15. See also, *Sharp v. 251st St. Landfill, Inc.,* 810 P.2d 1270, 1276 (Okla.1991) (Granting of permit by government agency not sufficient to determine whether construction pursuant to permit might constitute a nuisance.); *Briscoe v. Harper Oil Co.,* 702 P.2d 33, 36 (Okla.1985) (License, permit or franchise will not protect licensee who abuses privilege by erecting or maintaining a nuisance.); *State v. Mike Kelley Constr. Co.,* 638 P.2d 455–56 (Okla.1981) (Violation of state statute alone not sufficient to support finding of a nuisance.); *Weaver v. Bishop,* 174 Okla. 492, 52 P.2d 853, 858 (1935) (Issuance of a building permit not intended to determine mutual rights of property owners in a nuisance action.).

does not justify, in and of itself, granting a private party an injunction.[16]

Additionally, the trial court did not err in submitting both the question of the existence of the nuisance and the issue of whether it caused the claimed damages to the jury. If, as here, both injunctive relief and damages are sought, the existence of a nuisance and its resulting damages are questions of fact for the jury.[17]

## II.

## AN INSTRUCTION ON THE RIGHTS OF RIPARIAN LAND OWNERS CONTAINING NO LIMITING LANGUAGE CONCERNING ACTIONS THAT MAY BE TAKEN TO PROTECT PROPERTY IS DEFECTIVE.

Smicklas contends that a jury instruction on the rights of a riparian land owner to protect the land is defective if it fails to contain language limiting the action which may be taken. Spitz insists that because the instruction given accurately reflected his rights, it was unnecessary for it to contain language indicating that he was entitled to take no action beyond that outlined.

Instructions are explanations of the law of a case enabling a jury to better understand its duty and to arrive at a correct conclusion.[18] It is the trial court's duty to instruct on the fundamental issues of a case. Failure to do so is grounds for a new trial.[19] In giving instructions, the trial court is not required to frame the issues, but it must state the law correctly.[20]

Smicklas and Spitz are riparian land owners. The rule of law concerning activities to protect the property of these land owners is stated in *Sinclair Prairie Oil Co. v. Fleming*, 203 Okl. 600, 225 P.2d 348, 350, 23 A.L.R.2d 741, 746 (1949). In *Fleming*, we stated that a riparian owner could construct the necessary embankments, dikes, or other structures: 1) to keep a river bank in its original position; 2) to restore the banks to their prior condition; or 3) to bring the stream back into its natural course when it has encroached on the owner's land.[21] If a property owner does no more under *Fleming*, other riparian owners cannot recover damages for any injury caused by the property owner's actions. The rights expressed in *Fleming* are not absolute. Only property owners taking actions to maintain the status quo of the flowing river or the property its bounds are held blameless.

Here, the jury was told that Spitz could construct dikes, embankments or other structures: 1) to maintain his bank in its original place or condition; 2) to protect his bank from the effects of erosion or floods;

**16.** The finding that a private party must show a specific injury in order to maintain an action for public nuisance conforms with our jurisprudence. *Schlirf v. Loosen*, 204 Okl. 651, 232 P.2d 928, 930 (1951); *Ruminer v. Quanilty*, 198 Okl. 395, 179 P.2d 164, 166 (1947); *Thomas v. Farrier*, 179 Okl. 263, 65 P.2d 526, 528 (1937). See also, Annot., "What Constitutes Special Injury that Entitles Private Party to Maintain Action Based on Public Nuisance—Modern Cases," 71 A.L.R.4th 13, 18–19 (1989); Restatement (Second) of Torts § 821C (1979) provides in pertinent part:
"(1) In order to recover damages in an individual action for a public nuisance, one must have suffered harm of a kind different from that suffered by other members of the public exercising the right common to the general public that was the subject of interference...."

**17.** *Tenneco Oil Co. v. Allen*, 515 P.2d 1391, 1398 (Okla.1973); *Goodall v. City of Clinton*, 196 Okl. 10, 161 P.2d 1011, 1013 (1945). See also, *Haen-*

*chen v. Sand Prod. Co.*, 626 P.2d 332, 335 (Okla.App.1981) (In nuisance action to recover damages and abate flooding caused by earthen dam, existence of embankment, its status as a nuisance, and resultant damages are questions for the jury.).

**18.** *Midland Valley R.R. Co. v. Pettie*, 196 Okl. 52, 162 P.2d 543, 546 (1945); *Hanson v. Kent & Purdy Paint Co.*, 36 Okl. 583, 129 P. 7 (1912).

**19.** *LPCX Corp. v. Faulkner*, 818 P.2d 431, 437 (Okla.1991); *Young v. First State Bank*, 628 P.2d 707, 712 (Okla.1981); *Bradley Chevrolet, Inc. v. Goodson*, 450 P.2d 500, 502 (Okla.1969); *Phillips Petroleum Co. v. Price*, 298 P.2d 772, 777 (Okla.1956).

**20.** *Sellars v. McCullough*, 784 P.2d 1060, 1062 (Okla.1990).

**21.** The same rule is restated in *Pechacek v. Hightower*, 269 P.2d 342, 344 (Okla.1954).

or 3) to restore his bank to its original condition if its has been eroded or damaged by the river.[22] The instruction given does not accurately represent the three instances outlined by *Fleming* in which a riparian land owner may construct an embankment, dike or other structure. The first and third parts of the instruction indicating that a property owner may maintain and restore the land to its original form are consistent with the rights outlined in *Fleming*. However, under the second part of the instruction, the jury may have assumed that Spitz was free to take whatever action necessary to protect his property—even to the extent of injuring his neighbor. The instruction does not contain any limiting language stating that, in order to be exonerated from liability, Spitz could do no more than maintain the original flow of the river or the prior condition of his property line.

 The standard of review of challenged instructions is whether there is a probability that the jurors were misled and thereby reached a different result than they would have reached but for the error.[23] The testimony presented at trial was contradictory on the issues of whether the Spitz earthwork went beyond restoration of a natural condition, and whether it altered the natural flow of the river. Under the incomplete instruction given, the jury could well have assumed that Spitz was free to take whatever action necessary to protect his property rather than being limited by either the original course of the river or the prior condition of his property. While the instruction as a whole contained some prop-

er statements of the applicable law, we find a probability that Smicklas's case was prejudiced by the incomplete instruction. The judgment must be reversed.[24]

### III.

AN EXPERT WITNESS MAY BE IMPEACHED WITH SWORN TESTIMONY GIVEN IN A PRIOR UNRELATED CASE IF THE TESTIMONY IS RELEVANT AND IF IT TENDS TO EXPLAIN, CONTRADICT OR DISCREDIT THE WITNESS'S TESTIMONY. HERE, THE EXPERT'S PRIOR INCONSISTENT STATEMENTS CONCERNING RIVER MECHANICS ARE ADMISSIBLE.

 Smicklas argues that prior inconsistent testimony in an unrelated case may be used to impeach an expert witness. Spitz does not disagree with the proposition.[25] Instead, he insists that the prior statements offered are irrelevant. We disagree.

Both Smicklas and Spitz find support in this Court's pronouncement in *Faulkenberry v. Kansas City S. Ry. Co.*, 661 P.2d 510, 514 (Okla.1983), *cert. denied*, 464 U.S. 850, 104 S.Ct. 159, 78 L.Ed.2d 146 (1983). Smicklas cites *Faulkenberry* for the proposition that, generally, any matter is a proper subject of cross-examination if it is within the scope of direct examination; if it is relevant thereto; and if it tends to explain, contradict, or discredit a witness' testimony. Recognizing this premise, Spitz relies

---

**22.** See note 2, supra.

**23.** *Ankney v. Hall,* 764 P.2d 153, 155 (Okla.1988); *Woodall v. Chandler Material Co.,* 716 P.2d 652, 654 (Okla.1986).

**24.** *Young v. First State Bank,* see note 19, supra; *Woolfolk v. Semrod,* 351 P.2d 742, 744 (Okla.1960).

**25.** The Oklahoma Evidence Code, 12 O.S.1991 § 2101 et seq., provides for the admission of inconsistent statements. Section 2613 provides in pertinent part:

"A. In examining a witness concerning a prior statement made by him whether written or not, the statement need not be shown nor its

contents disclosed to him at that time but on request the same shall be shown or disclosed to opposing counsel just prior to the cross-examination of the witness.

B. Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon...."

The use of prior inconsistent statements has been the traditional means of impeaching a witness. L. Whinery, *Oklahoma Evidence: Guide to the Oklahoma Evidence Code,* v. 1, art. 6, p. 229 (West 1985). See also, Annot., "Denial of Recollection as Inconsistent with Prior Statement so as to Render Statement Admissible," 99 A.L.R.3d 934, 938 (1980).

upon the Court's further statement that a witness may not be impeached by reference to some collateral or irrelevant matter. We agree with both parties concerning the general rule on impeachment espoused in *Faulkenberry*. However, Spitz's reliance on the case for the proposition that the inconsistent testimony offered for impeachment here is irrelevant is misplaced.

*Faulkenberry* is distinguishable from the instant cause on its facts. There, we found that a psychological test conducted by another person and given before the source of the employee's physical problems had been diagnosed was irrelevant. Here, Spitz's expert witness testified that the use of heavy equipment on a sand base had nothing to do with the diversion of the river. Smicklas sought to impeach this testimony by the introduction of the same witnesses' prior inconsistent statement made in a deposition in another case involving the same river.[26] In the prior case, the expert testified that the use of heavy equipment on a sand base would compact it and make it more resistant to erosion.[27] In that case, the expert was asked whether such activity would have only a minimal impact on the river. He replied that the use of the equipment was the only thing which happened to cause the change in the course of the river.[28] In both the prior case and this one, use of heavy equipment on a sand base and its effect are relevant. Under these facts, the prior inconsistent statements of the expert witness were admissible for the purpose of impeachment.[29]

## CONCLUSION

The clear language of 50 O.S.1991 § 10[30] requires that before an individual can abate a public nuisance, it must be shown that the activity is specifically injurious to the person's rights. The violation of a municipal ordinance is not *per se* sufficient to establish the injury necessary under § 10.[31]

---

**26.** In *Nail v. Oklahoma Children's Memorial Hosp.*, 710 P.2d 755, 762 (Okla.1985), we recognized that a treatise, written by the witness, could properly be introduced as evidence of a prior inconsistent statement.

**27.** Smicklas sought to lay a foundation to present the prior inconsistent testimony by asking the expert if he had ever given testimony related to the compression of sand causing the diversion of the river. Spitz responded with an objection to the foundation of the question. When Smicklas attempted to continue the questioning through use of the deposition, the trial judge asked to read the deposition. The objection was sustained and the deposition was accepted as an offer of proof. A careful reading of the transcript indicates that the trial judge refused to allow the questioning based on the relevance of the material, not because counsel failed to lay a proper foundation. Indeed, the trial court's intervention precluded Smicklas' establishment of the time, the place, and the manner in which the prior statements were made. The record provides at p. 789–90 in reference to the inconsistent testimony contained in the deposition:

"THE COURT: The Court's interpretation of that portion which was presented to the Court was that it was not inconsistent with the testimony which was presented before this Court, in that the testimony which was presented to the Court in a previous sworn statement was that sand could be compacted, but there was nothing in there which said that it entered— which was presented to the Court that it interfered with the flow of the river. And is accepted as an offer of proof."

Here, the trial court intervened by taking the deposition to read on the issue of relevancy before Smicklas was given the opportunity to lay the foundation in relation to the time, the place, and the manner in which the inconsistent statements were made. *Evans v. Burleson*, 127 Okl. 290, 260 P. 743–44 (1927); *Wing v. State*, 280 P.2d 740, 746 (Okla.Crim.1955).

**28.** *Arkansas Energy Resources, Ltd. v. Floyd Bergen*, No. C–87–17, deposition of Emmett M. Laursen, taken on April 25, 1987. The deposition provides in pertinent part at p. 59:

"... Q. Well, let me ask you this: Isn't it really a fair statement to say that the activities of driving these trucks and scrapers over this area would have a minimal impact on the change in the river?
A. It's the only thing that I can see that's happened there that would cause the river to change its course...."

**29.** Because we have determined that the cause must be remanded for a new trial on the basis that the instructions were fatally defective, we need not determine whether the exclusion of the elicited testimony constitutes grounds for reversal. See, *Matter of Adoption of C.M.G.*, 656 P.2d 262, 266 (Okla.1982); *Davon Drilling Co. v. Ginder*, 467 P.2d 470, 474 (Okla.1970).

**30.** Title 50 O.S.1991 § 10, see note 3, supra.

**31.** *Texas Co. v. Brandt*, 79 Okl. 97, 191 P. 166, 169 (1920). See also, *Sharp v. 251st St. Landfill, Inc.*, note 15, supra; *Briscoe v. Harper Oil Co.*,

Although riparian landowners may take necessary action to protect their property from flowing waters, they may not take action beyond that necessary to maintain their property in its original form. The instruction given indicates that Spitz was free to take whatever steps necessary to protect his property—even action going beyond maintaining the original flow of the river or the prior condition of his banks. The instruction is prejudicial. It requires reversal. Under the facts presented, the expert's prior inconsistent statements in an unrelated case are admissible for impeachment purposes.

CERTIORARI PREVIOUSLY GRANTED; COURT OF APPEALS OPINION VACATED; REVERSED AND REMANDED FOR A NEW TRIAL.

OPALA, C.J., HODGES, V.C.J., and HARGRAVE, ALMA WILSON, SUMMERS and WATT, JJ. concur.

SIMMS, J., concurs in judgment.

LAVENDER, J., concurs in part, dissents in part.

---

note 15, supra; *State v. Mike Kelley Constr. Co.,* note 15, supra; *Weaver v. Bishop,* note 15, supra.