2006 OK 42

**Daniel J. McCLURE, Plaintiff,**

v.

**CONOCOPHILLIPS COMPANY,
Defendant.**

No. 103,199.

Supreme Court of Oklahoma.

June 20, 2006.

David R. Blades, Armstrong & Lowe, P.C., Tulsa, OK, for plaintiff.

Steven A. Broussard, Robert A. Fitz–Patrick, Stephanie T. Gentry, Hall, Estill, Hardwick, Gable, Golden & Nelson, P.C., Tulsa, OK, for defendant.

WATT, C.J.

¶ 1 The United States District Court for the Northern District of Oklahoma certified a single first impression question of Oklahoma law to this Court under the Revised Uniform Certification of Questions of Law Act, 20 O.S.2001 §§ 1601, et seq. As reformulated,[1] the question is:

> Whether the Oklahoma Standards for Workplace Drug and Alcohol Testing Act (Testing Act), 40 O.S.2001 § 551 et seq. and the administrative rules promulgated pursuant thereto, allow an employer, using

1. Questions of law may be reformulated pursuant to 20 O.S.2001 § 1602.1. See also *Strong v. Laubach*, 2004 OK 21, ¶ 1, 89 P.3d 1066. As originally certified, the question provides:

 "Does the Act [Oklahoma Standards for Workplace Drug and Alcohol Testing Act] allow the employer to confirm an initial positive alcohol test result by a second test performed using the same Evidential Breath Testing Device ('EBT') on different breath samples or does the Act require the employer to confirm the initial positive test result by a test performed on the initial sample that uses different chemical principles and is of equal or greater accuracy than the prior drug or alcohol test?"

2. EBTs are instruments which measure the alcohol content of deep lung breath samples with sufficient accuracy for evidential purposes. *Coniglio v. Department of Motor Vehicles*, 39 Cal. App.4th 666, 46 Cal.Rptr.2d 123, 129 (1995), *review denied* (1996).

3. In answering a certified question, the Court does not presume facts outside those offered by the certification order. *In re Harris*, 2002 OK 35, ¶ 4, 49 P.3d 710; *Jones v. University of Central Oklahoma*, 1995 OK 138, ¶ 5, 910 P.2d 987.

an approved evidential breath testing (EBT)[2] device, to confirm an initial positive alcohol test by a second test performed using the same EBT on a different breath sample?

We answer the question "yes." Our determination is supported by: the regulatory scheme as applied to ambiguous statutory language; rules of statutory construction; and extant jurisprudence.

## CERTIFIED FACTS[3] AND PROCEDURAL BACKGROUND

¶ 2 The plaintiff, Daniel J. McClure (McClure/employee), began working for the defendant, ConocoPhillips Company (ConocoPhillips/employer), in May of 1978. On February 7, 2005, after being contacted by Ruth Betts, the employer's breath alcohol technician (BAT)[4] responsible for random alcohol and drug testing[5] for the employer, McClure submitted to an alcohol breath test.

¶ 3 The employee's initial alcohol test was conducted at approximately 10:00 a.m. using an EBT—a device which analyzes breath samples and calculates the blood alcohol concentration level. The first test indicated that the employee had a blood alcohol level of 0.055 gm/dl. Between fifteen and twenty

Although we will neither add nor delete such facts, we may consider uncontested facts supported by the record. See, *In re Harris*, this note, supra.

4. OAC 310:638–7–6 (1995) provides in pertinent part:

 "(a) **The breath alcohol technician.**
 (1) The breath alcohol technician (BAT) shall be trained to proficiency in the operation of the EBT(s) the BAT is using and in the alcohol testing procedures of this chapter...."

5. Title 40 O.S.2001 § 553 provides in pertinent part:

 "... B. Except as provided in subsection C of this section, employers who choose to conduct drug or alcohol testing of job applicants or persons employed in this state shall be governed by the provisions of this act and the rules promulgated pursuant thereto...."

 Title 40 O.S.2001 § 554 provides in pertinent part:

 "... 4. Random testing: A public or private employer may request or require an employee to undergo drug or alcohol testing on a random selection basis ..."

minutes later—after the EBT tested an "air blank" demonstrating a reading of 0.00 gm/dl, McClure submitted to a second test on the same EBT device as utilized for the initial test. The second test showed the employee with a blood alcohol level of 0.053 gm/dl. At approximately 1:00 p.m. on the same day, McClure had a blood specimen collected for an independent alcohol analysis. The test indicated a serum alcohol concentration of .0286 g/dl. It is undisputed that the two tests conducted by ConocoPhillips exceeded the employer's policy level of 0.04 gm/dl and the Oklahoma Health Department's level of 0.02 gm/dl.[6]

¶4 The question certified arises from ConocoPhillips' termination of McClure on February 8, 2005. The employee filed a complaint in the federal district court on April 14, 2005, alleging violation of the Testing Act and wrongful discharge. McClure sought: declaratory relief to determine the rights, status and other legal relationships between the parties; compensatory and punitive damages along with lost wages or, in the alternative, reinstatement with full benefits and salary; and costs and attorney fees. On November 10, 2005, McClure moved for summary judgment asserting that ConocoPhillips violated the Testing Act by failing to perform a confirmation test on the same breath sample using a different chemical means of equal or greater scientific reliability than the initial screening. Also on the 10th, the employer filed its motion for summary judgment arguing that the tests resulting in the employee's termination were conducted in full compliance with the Testing

Act and the administrative rules promulgated pursuant thereto.[7]

¶5 Recognizing that the lawsuit involved an issue of first impression Oklahoma law, the parties joined in a certification motion. On March 10, 2006, the federal court certified the question to this Court pursuant to the Revised Uniform Certification of Questions of Law Act, 20 O.S.2001 §§ 1601, *et seq.* We set a briefing cycle which was concluded on May 9, 2006, with the simultaneous filing of McClure's reply brief and ConocoPhillips' response brief.

## DISCUSSION

¶6 a. **Neither the Oklahoma Standards for Drug and Alcohol Testing Act, 40 O.S. 2001 § 551 *et seq.*, nor the administrative rules promulgated pursuant thereto, require an employer to confirm an initial positive breath alcohol test by a second test performed using a different evidential breath testing (EBT) device on the same breath sample initially collected.**

¶7 **McClure does not attack the BAT's qualifications or the procedures she utilized. Neither does the employee contest the results of either the initial or the second EBT test, nor does he allege that the device utilized was not an approved testing machine or that it malfunctioned. Rather, he argues that his termination violated the Testing Act for the reason that his initial blood alcohol test was not confirmed as contemplated by the Act.[8] Because the sec-**

---

6. The Oklahoma State Board of Health has determined that a blood alcohol concentration of 0.02 or greater constitutes a positive confirmation test for alcohol. OAC 310:638–7–5 (1995) providing:

 "Cutoff level and alcohol confirmation tests
 All positive initial alcohol screening tests shall be confirmed using breath analyzed by an EBT or blood analyzed by gas chromatography (GC). A test performed on blood and analyzed by gas chromatography shall be considered a confirmed alcohol test. An alcohol concentration of 0.02 or greater shall be considered a positive confirmation test for alcohol."

 See also, OAC 638–7–4 (1995). ConocoPhillips' substance abuse plan provides that a test for the presence of alcohol in the blood is considered positive at a blood alcohol level of 0.04 gm/dl or

higher. Under the policy, an employee with a first-time positive test is subject to immediate termination.

7. Title 40 O.S.2001 § 557(A) providing in pertinent part:

 "The State Board of Health shall implement and enforce the provisions of the Standards for Workplace Drug and Alcohol Testing Act. The Board shall have the power and duty to promulgate, prescribe, amend and repeal rules for the licensure and regulation of testing facilities and for the establishment and regulation of minimum testing standards and procedures ..."

8. Title 40 O.S.2001 § 562 provides in pertinent part:

ond test was conducted utilizing the same EBT on a different breath sample than the initial test, he asserts that the second test did not meet the definition of a "confirmation test" [9] within the meaning of the Testing Act. ConocoPhillips contends that neither the Testing Act nor the administrative rules promulgated in its support require an employer to confirm an initial positive breath alcohol test result by a second test performed using a different EBT on the same breath sample. We agree with this contention.

¶ 8 1) **The Legislature's utilization of the phrase requiring that a test result be "confirmed" before an employee is subject to dismissal pursuant to 40 O.S.2001 § 562 rather than referring to the statutorily defined term, "confirmation test," contained in 40 O.S. Supp.2005 § 552 creates an ambiguity subject to statutory construction.**

¶ 9 In 1993, the Oklahoma Legislature enacted the Oklahoma Standards for Workplace Drug and Alcohol Testing Act, 40 O.S.2001 § 551 *et seq.* The Legislature designated the State Board of Health (Board of Health) as the entity to implement and enforce the Act, granting it the "power and

duty to promulgate, prescribe, amend and repeal rules for ... the establishment and regulation of minimum testing standards and procedures ...".[10] Furthermore, the Legislature specifically provided that employers choosing to conduct drug or alcohol testing of job applicants or employees should be governed by the Testing Act's provisions and the rules promulgated pursuant thereto.[11] In 1994, the Board of Health responded to the legislative directive by enacting a comprehensive set of rules for drug and alcohol testing.

¶ 10 The employee contends that two statutory provisions control the cause. First, he directs us to 40 O.S.2001 § 562 providing in pertinent part:

"A. No disciplinary action, except for a temporary suspension or a temporary transfer to another position, may be taken by an employer against an employee based on a positive test result **unless the test result has been confirmed** by a second test using gas chromatography, gas chromatography-mass spectroscopy, **or an equivalent scientifically accepted method of equal or greater accuracy** as approved by rule of the State Board of

---

"A. No disciplinary action, except for a temporary suspension or a temporary transfer to another position, may be taken by an employer against an employee based on a positive test result unless the test result has been confirmed by a second test using gas chromatography, gas chromatography-mass spectroscopy, or an equivalent scientifically accepted method of equal or greater accuracy as approved by rule of the State Board of Health, at the cutoff levels determined by Board rule...."
In his answer brief, the employee concedes that EBT devices are the preferred method for conducting alcohol testing and that the devices may be used both for initial and confirmation tests. Additionally, he states that a breath sample need not be "one breath" but may relate to all the breath in a person's body during a certain time period. [Admissions in a brief may be regarded as a supplement to the appellate record. *King v. King,* 2005 OK 4, ¶ 16, 107 P.3d 570; *Keating v. Edmondson,* 2001 OK 110, ¶ 9, 37 P.3d 882; *World Publishing Co. v. White,* see note 22, infra.] Nevertheless, he asserts that a different means of testing must be utilized for the confirmation test than on the original test. The assertion appears to ignore the fact that if the means utilized in the initial test is a breath alcohol test on an EBT device, any confirmation test would be required

to be done of a different sample whether it be saliva, blood or breath.

9. Title 40 O.S. Supp.2005 § 552 provides in pertinent part:
 "... 4. 'Confirmation test' means a drug or alcohol test on a sample to substantiate results of a prior drug or alcohol test on the same sample and which uses different chemical principles and is of equal or greater accuracy than the prior drug or alcohol test ...."
 The definition, confirmation test, utilized in the 2005 legislation is identical to its 2001 counterpart. Therefore, references are to the current version.

10. Title 40 O.S.2001 § 557 provides in pertinent part:
 "A. The State Board of Health shall implement and enforce the provisions of the Standards for Workplace Drug and Alcohol Testing Act. The Board shall have the power and duty to promulgate, prescribe, amend and repeal rules ... for the establishment and regulation of minimum testing standards and procedures ...."

11. Title 40 O.S.2001 § 553, see note 5, supra, entitled "construction of act."

Health, at the cutoff levels determined by Board rule...." [Emphasis added.]

Second, he finds support in 40 O.S. Supp. 2005 § 552 providing in pertinent part:

"... 4. **'Confirmation test'** means a drug or alcohol test on a sample to substantiate results of a prior drug or alcohol test **on the same sample and which uses different chemical principles** and is of equal or greater accuracy than the prior drug or alcohol test ..." [Emphasis provided.]

¶ 11 McClure stresses that the highlighted language is clear and unambiguous and not subject to judicial interpretation.[12] He argues that the statutory definition of a "confirmation test" as being on the same sample utilizing different chemical principles clearly negates the employer's utilization of the same EBT on a different breath sample as a basis for his termination. ConocoPhillips emphasizes that the statutorily defined term is not utilized in 40 O.S.2001 § 562 which refers instead to a "test result [which] has been confirmed." The employers' position is that there is an ambiguity in the statutes requiring this Court's interpretation.

 ¶ 12 In determining whether a statute applies to a given set of facts, we focus on legislative intent[13] which controls

statutory interpretation.[14] Intent is ascertained from the whole act in light of its general purpose and objective[15] considering relevant provisions together to give full force and effect to each.[16] The Court presumes that the Legislature expressed its intent and that it intended what it expressed.[17] Statutes are interpreted to attain that purpose and end[18] championing the broad public policy purposes underlying them.[19] Only where the legislative intent cannot be ascertained from the statutory language, *i.e.* in cases of ambiguity or conflict, are rules of statutory construction employed.[20] If a statute is ambiguous, we may defer to an administrative agency's interpretation.[21]

 ¶ 13 The language of the two statutes is not so clear as to be beyond interpretation. We recognize that the Legislature may always exercise the prerogative to define words or phrases appearing in legislative enactments and, where a statute contains a definition, the definition is binding on the courts.[22] When the provisions of a statute assign one meaning to a word or phrase, its definition will apply in every other instance **in which the same term** is found anywhere else in the statutory compilation.[23] Nevertheless, where a different term is uti-

12. *Nealis v. Baird,* 1999 OK 98, ¶ 55, 996 P.2d 438.

13. *Nealis v. Baird,* see note 12, supra; *Cooper v. State ex rel. Dept. of Public Safety,* 1996 OK 49, ¶ 10, 917 P.2d 466.

14. *Smicklas v. Spitz,* 1992 OK 145, 846 P.2d 362; *Clifton v. Clifton,* 1990 OK 88, ¶ 7, 801 P.2d 693; *Fuller v. Odom,* 1987 OK 64, ¶ 4, 741 P.2d 449.

15. *McSorley v. Hertz Corp.,* 1994 OK 120, ¶ 6, 885 P.2d 1343; *Oglesby v. Liberty Mut. Ins. Co.,* 1992 OK 61, ¶ 8, 832 P.2d 834; *Smicklas v. Spitz,* see note 14, supra.

16. *Haney v. State,* 1993 OK 41, ¶ 5, 850 P.2d 1087; *Public Serv. Co. of Oklahoma v. State ex rel. Corp. Comm'n,* 1992 OK 153, ¶ 8, 842 P.2d 750.

17. *Minie v. Hudson,* 1997 OK 26, ¶ 7, 934 P.2d 1082; *Fuller v. Odom,* see note 14, supra; *Darnell v. Chrysler Corp.,* 1984 OK 57, ¶ 5, 687 P.2d 132.

18. *Oklahoma Ass'n for Equitable Taxation v. City of Oklahoma City,* 1995 OK 62, ¶ 5, 901 P.2d 800,

*cert. denied,* 516 U.S. 1029, 116 S.Ct. 674, 133 L.Ed.2d 523 (1995); *Wilson v. State of Oklahoma ex rel. Oklahoma Tax Comm'n,* 1979 OK 62, ¶ 5, 594 P.2d 1210; *Affiliated Mgt. Corp. v. Oklahoma Tax Comm'n,* 1977 OK 183, 570 P.2d 335.

19. *Haggard v. Haggard,* 1998 OK 124, ¶ 1, 975 P.2d 439; *Price v. Southwestern Bell Tel. Co.,* 1991 OK 50, ¶ 7, 812 P.2d 1355.

20. *State ex rel. Dept. of Human Serv. v. Colclazier,* 1997 OK 134, ¶ 9, 950 P.2d 824; *Matter of Estate of Flowers,* 1993 OK 19, ¶ 11, 848 P.2d 1146.

21. *City of Tulsa v. State ex rel. Public Employees Relations Bd.,* see note 22, infra.

22. *World Publishing Co. v. White,* 2001 OK 48, ¶ 12, 32 P.3d 835; *City of Tulsa v. State. of Oklahoma, ex rel. Public Employees Relations Bd.,* 1998 OK 92, ¶ 14, 967 P.2d 1214; *Oliver v. City of Tulsa,* 1982 OK 121, ¶ 18, 654 P.2d 607.

23. *Fraternal Order of Police, Lodge 108 v. City of Ardmore,* 2002 OK 19, ¶ 14, 44 P.3d 569; *Oliver v. City of Tulsa,* see note 22, supra; *Stone v. Hodges,* 1967 OK 214, ¶ 6, 435 P.2d 165.

lized or the same term is modified by the insertion of an explanatory term, similar statutory terms may have a different meaning for purposes of the statute.[24]

¶ 14 Here, not only did the Legislature not use the same term in the employee disciplinary provision as it did in the definitions section, it utilized the term in only two other places in the Testing Act. Section 557 of title 40 mentions confirmation tests in association with facilities doing urine analysis for "initial or confirmation tests"[25] while the preceding section of the Act requires employers to pay all costs of testing "including confirmation tests."[26]

¶ 15 Failure to use the precise language of the defined term in relation to breath alcohol tests and in the employee disciplinary provision renders the language utilized in its stead subject to judicial consideration—it is unclear whether the provisions of the defined term require an employer to scrutinize the same breath sample originally tested a second time utilizing different chemical principles before an employee may be terminated for a positive test. Certainly, there is nothing in the statutory text unambiguously requiring the utilization of such testing procedures. Furthermore, the Legislature has left the issue of all sample collection, testing and preserva-

tion to the Board of Health—specifically leaving the issue of specimen splitting for independent analysis to the Board's discretion.[27]

¶ 16 **2) Through adoption of administrative rules, the Board of Health has made it clear that EBTs are authorized both for initial and confirming tests for blood alcohol levels. The Legislature has acquiesced in this interpretation.**

¶ 17 Pursuant to the Administrative Procedures Act, 75 O.S.2001 § 250 *et seq.*, the Legislature may delegate rule making authority to agencies, boards and commissions to facilitate the administration of legislative policy.[28] Administrative rules are valid expressions of lawmaking powers having the force and effect of law.[29] Administrative rules, like statutes, are given a sensible construction bearing in mind the evils intended to be avoided.[30]

¶ 18 The Board of Health is authorized to promulgate rules and procedures for the establishment and regulation of minimum testing standards and procedures for drug and alcohol testing.[31] In connection with this duty, it has mandated[32] that **breath or sali-**

24. See, *Fraternal Order of Police, Lodge 108 v. City of Ardmore*, note 23, supra.

25. Title 40 O.S.2001 § 557(A)(1) provides:
"Qualifications of testing facilities which shall include the requirement that facilities doing urine analysis for initial or confirmation tests either be certified for forensic urine drug testing pursuant to guidelines or regulations of the federal Department of Health and Human Services or be accredited for forensic urine drug testing by the College of American Pathologists or other organizations recognized by the State Board of Health;"

26. Title 40 O.S.2001 § 556(B) provides in pertinent part:
"An employer shall pay all costs of testing for drugs or alcohol required by the employer, including confirmation tests required by this act ..."

27. Title 40 O.S.2001 § 559 provides in pertinent part:
"All sample collection and testing for drugs and alcohol pursuant to the provisions of this act shall be conducted in accordance with the following conditions:

.... 4. A sample shall be collected in sufficient quantity for splitting into two separate specimens, pursuant to rules of the State Board of Health, to provide for any subsequent independent analysis in the event of challenge of the test results of the main specimen ..."
Title 40 O.S. Supp.2005 § 552(14) provides in pertinent part:
" 'Sample' means tissue, fluid or product of the human body chemically capable of revealing the presence of drugs or alcohol in the human body ..."

28. Title 75 O.S.2001 § 250.2(B).

29. Title 75 O.S.2001 § 308.2(C).

30. *Walker v. Group Health Serv., Inc.*, 2001 OK 2, ¶ 27, 37 P.3d 749; *Oklahoma Alcoholic Beverage Control Bd. v. Burris*, 1980 OK 58, ¶ 13, 626 P.2d 1316, 20 A.L.R.4th 593.

31. Title 40 O.S.2001 § 557, see note 7, supra.

32. Generally, the use of "shall" signifies a legislative command. *Barzellone v. Presley*, 2005 OK 86, ¶ 35, 126 P.3d 588; *Cox v. State ex rel.*

va shall be the preferred methods for the initial test for alcohol and that either breath or blood shall be used for the confirmation test for alcohol.[33] Only when an EBT or appropriately trained BAT is not readily available, may enzyme blood tests for initial alcohol testing be used.[34] If a positive initial alcohol screening test is returned, OAC 310:638–7–5 directs that confirmation tests utilizing a breath sample "shall be ... analyzed by an EBT or blood analyzed by gas chromatography."[35]

■■■ ¶ 19 The year following the Legislature's adoption of the Testing Act, the Board of Health followed with rules. Statutory construction by agencies charged with the law's enforcement is given persuasive effect especially when made **shortly after** the statute's enactment.[36] Nevertheless, if the Legislature disagrees with an agency interpretation, it may: 1) delay, suspend, veto or amend any rule or proposed rule under review by joint resolution;[37] 2) disapprove a permanent or emergency rule at any time if it determines the rule to be inconsistent with legislative intent;[38] or 3) make emergency rules ineffective through its disapproval.[39] Such legislative action has not been instituted. Furthermore, successive Legislatures have amended both the definitions section and the provisions relating to restrictions on drug and alcohol testing by employers without rejecting the rules promulgated. The Legislature's silence is proof of the lawmakers' consent[40] and its adoption of the administrative construction.[41]

¶ 20 There is an ambiguity in the statutory scheme when 40 O.S.2001 § 562[42] referring to a test being "confirmed" and the statutory definition of a "confirmation test" contained in 40 O.S. Supp.2005 § 552[43] are considered together. Nevertheless, the Board rules

---

*Oklahoma Dept. of Human Services*, 2004 OK 17, ¶ 21, 87 P.3d 607; *United States* through *Farmers Home Admin. v. Hobbs*, 1996 OK 77, ¶ 7, 921 P.2d 338. Nevertheless, there may be times when the term is permissive in nature. *Minie v. Hudson*, 1997 OK 26, ¶ 7, 934 P.2d 1082; *Texaco, Inc. v. City of Oklahoma City*, 1980 OK 169, ¶ 9, 619 P.2d 869.

**33.** OAC 310:638–1–4 (2000) provides in pertinent part:
"... (1) **Initial tests.** Breath or saliva shall be used for the initial test for alcohol....
(2) **Confirmation tests.** Breath or blood shall be used for the confirmation test for alcohol...."
OAC 310:638–7–5 (1995), see note 35, infra.

**34.** OAC 310:638–7–4 (1995) provides in pertinent part:
"... (b) ... (4) Enzyme blood tests for alcohol initial testing shall be used only under limited circumstances when an alcohol screening device, EBT, or appropriately trained breath alcohol technician (BAT) is not readily available to conduct alcohol testing by another method...."

**35.** OAC 310:638–7–5 provides in pertinent part:
"All positive initial alcohol screening tests shall be confirmed using breath analyzed by an EBT or blood analyzed by gas chromatography (CG). A test performed on blood and analyzed by gas chromatography shall be considered a confirmed alcohol test...."
See also, OAC 310:638–7–6 (1995) providing in pertinent part::
"... (b) **Devices for breath alcohol confirmation tests.** For confirmation tests, alcohol test-

ing facilities shall use EBTs that meet the following requirements:
... (5) EBTs shall be capable of testing an air blank prior to each collection of breath ...
(e) **Procedures for confirmation tests....**
(3) Before the confirmation test is administered for each employee, the BAT shall ensure that the EBT registers 0.00 on an air blank. If the reading is greater than 0.00, the BAT shall conduct one more air blank. If the reading is greater than 0.00, testing shall not proceed using the instrument. However, testing may proceed on another instrument...."

**36.** *Walker v. Group Health Servs., Inc.*, see note 30, supra; *Schulte Oil Co., Inc. v. Oklahoma Tax Comm'n*, 1994 OK 103, ¶ 4, 882 P.2d 65.

**37.** Title 75 O.S.2001 § 250.2(B)(4).

**38.** Title 75 O.S.2001 § 250.2(B)(6).

**39.** Title 75 O.S.2001 § 253(H).

**40.** *Walker v. Group Health Servs., Inc.*, see note 30, supra; *First of McAlester Corp. v. Oklahoma Tax Comm'n*, 1985 OK 52, ¶ 14, 709 P.2d 1026; *Peterson v. Oklahoma Tax Comm'n*, 1964 OK 78, ¶ 16, 395 P.2d 388.

**41.** *Branch Trucking Co. v. State ex rel. Oklahoma Tax Comm'n*, 1990 OK 41, ¶ 6, 801 P.2d 686; *Oral Roberts Univ. v. Oklahoma Tax Comm'n*, 1985 OK 97, ¶ 17, 714 P.2d 1013.

**42.** Title 40 O.S.2001 § 562, see note 8, supra.

**43.** Title 40 O.S. Supp.2005 § 552, see note 9, supra.

clearly demonstrate that: 1) EBTs are the favored tool for initial breath alcohol tests; and 2) EBTs are authorized as devices for tests to confirm initial positive breath alcohol tests.[44] The Legislature has had multiple opportunities to alter the construction placed on the Testing Act by agency rule. It has failed to do so. Rather, it has adopted the Board of Health's interpretation of the statutory scheme. Considering the Legislature's acquiescence in the administrative interpretation and there being no cogent reason for disturbing the administrative agency's interpretation,[45] we decline to do so.

¶ 21 **3) Rules of statutory construction do not support this Court's reading of exceptions into the regulatory scheme requiring the utilization of different EBT devices on a single breath sample.**

¶ 22 Having determined that EBTs may be utilized both for initial and confirmation breath alcohol testing, we must now address whether either the Testing Act or the agency rules require that a different device than the one utilized in the initial testing is required when a confirmation test is performed. Furthermore, we must also consider whether the same breath sample must be utilized in both tests.

¶ 23 The Testing Act does not designate a specific mechanism for breath alcohol testing and nothing in the agency rules require different EBTs to be available or to be utilized for initial and confirmation testing. Rather, only when an EBT fails to register 0.00 when testing an air blank before the second test is administered, is the use of a different device required.[46]

¶ 24 The EBT is a highly reliable machine, approved by the National Highway Traffic Safety Administration for breath alcohol testing.[47] EBTs are not equipped to retain a breath sample. Rather, using an EBT requires that two breath samples be taken for the initial and confirmation test.[48] Furthermore, between the initial test and the second test, the machine must do a screening test on an "air blank." Although the technology exists to retain a sealed breath sample,[49] neither the Testing Act nor administrative rules require the utilization of such a device.

¶ 25 The same rules of construction apply to administrative rules and regulations as to statutes.[50] A rule, like a statute, is construed reasonably and sensibly in preference to a construction which renders all, or a portion thereof, useless or permits absurd consequences.[51] This Court does not create exceptions or impose restrictions not contained in an agency's rules.[52] Applying these rules, we refuse to read exceptions into the regulatory scheme requiring the utilization of different EBT devices on a single breath sample. Therefore, we determine that, pursuant to the Testing Act and the administrative rules promulgated pursuant thereto, an

**44.** OAC 310:638–1–4 (2000), see note 33, supra; OAC 310:638–7–5 (1995), see note 35, supra.

**45.** *Berry v. Public Employees Retirement System,* 1989 OK 14, ¶ 8, 768 P.2d 898.

**46.** OAC 310:638–7–6(e) (1995), see note 35, supra.

**47.** When the Federal Department of Transportation published its initial alcohol testing regulations, only EBTs were approved for both initial and confirmation tests. D. Evans, "Drug Testing Law, Technology & Practice," § 7:10.50 (2006). EBTs are designed to provide accurate, precise, quantitative alcohol results. D. Faigman, D. Kaye, M. Saks, J. Sanders, "Modern Scientific Evidence: The Law and Science of Expert Testimony," 4 Med.Sci. Evidence § 22–2.3 (3d Ed.).

**48.** D. Evans, "Federal & State Drug & Alcohol Testing Laws," 1 Drug Testing Law Tech. & Prac. § 4:62 (2006).; OAC 310–638–7–6, see note 35, supra.

**49.** S.Oberman, "DUI: The Crime & Consequences in Tennessee," TNDUI § 6:7 (2006). See also, *Polk v. State ex rel. Oklahoma Dept. of Public Safety,* 1996 OK CIV APP 100, ¶ 3, 927 P.2d 55; OAC 30–1–4(b) (1993), *revoked* (2006).

**50.** *Charlson v. State ex rel. Dept. of Public Safety,* 2005 OK 83, ¶ 10, 125 P.3d 672; *Dolese Bros. v. State ex rel. Oklahoma Tax Comm'n,* 2003 OK 4, ¶ 9, 64 P.3d 1093.

**51.** *Charlson v. State ex rel. Dept. of Public Safety,* see note 50, supra; *Becknell v. State Indus. Ct.,* 1973 OK 90, ¶ 16, 512 P.2d 1180.

**52.** See, *State ex rel. Oklahoma Bar Ass'n v. Smolen,* 2000 OK 95, ¶ 17, 17 P.3d 456.

employer, using an approved evidential breath testing (EBT) device, may confirm an initial positive alcohol test by a second test performed using the same EBT on a different breath sample. To hold otherwise would eviscerate the rules for alcohol breath testing and require this Court to act as a super-legislature [53] rewriting a regulatory scheme clearly within the legislatively delegated authority of the Board of Health. This we will not do.

## ¶ 26 4) The answer to the certification question is supported by extant jurisprudence.

¶ 27 It has long been settled that the federal due process clause does not require that law enforcement agencies preserve breath samples of suspected drunk drivers in order for results of breath-analysis tests to be admissible in criminal prosecutions.[54] Nevertheless, research reveals only two cases from other jurisdictions which have touched on the precise question presented here—whether an employer may utilize the same EBT machine to test different breath samples.

¶ 28 In *Mississippi Dept. of Corrections v. Gooden*, 766 So.2d 783, 785 (Miss.App.2000), the employee argued on appeal that the confirmation test forming the basis of his discharge was inadequate because a single EBT machine was used for both the initial and the second breath alcohol test. Considering a statutory definition similar to the definition of "confirmation test" found in 40 O.S. Supp. 2005 § 552,[55] the Mississippi Court determined that the employee could not attack his discharge on this basis because he did not object to the introduction of the specimen at his original hearing.

¶ 29 More instructive is *International Brotherhood of Teamsters v. Federal Highway Admin.*, 56 F.3d 242 (D.C.Cir.1995). In *Teamsters*, the Union asserted that Federal Highway Administration (FHWA) regulations and Department of Transportation (DOT) rules violated the Omnibus Transportation Employee Testing Act. Like the Board of Health's regulations here, DOT rules required that EBTs be employed to determine an employee's alcohol level. As does McClure, the Union attacked the DOT testing regulations as defective because they did not require that a "split specimen" sample be retained when alcohol testing was performed using an EBT. The Union's charge against the FHWA regulations was based on their failure to require at least two supervisors to observe an employee before concluding that there was a reasonable suspicion of alcohol use.

¶ 30 The federal court dismissed both claims. As to the attack on the FHWA regulations, the court refused to read an exception into the rules requiring additional protection not specifically provided in the statutory scheme—here, neither the statutes nor the Board of Health's rules provide that two EBT machines must be utilized in the initial and confirmation testing procedures.

¶ 31 In determining that it was unnecessary for breath samples to be retained for separate tests, the district court considered a statutory provision requiring that "each specimen be considered" along with the legislative directive for the DOT to adopt testing

---

**53.** *Strong v. State ex rel. Oklahoma Police Pension & Retirement Bd.*, 2005 OK 45, ¶ 13, 115 P.3d 889; *City of Tulsa v. State ex rel. Public Employees Relations Bd.*, 1998 OK 92, ¶ 18, 967 P.2d 1214; *Toxic Waste Impact Group, Inc. v. Leavitt*, 1988 OK 20, ¶ 10, 755 P.2d 626.

**54.** *California v. Trombetta*, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984); *State v. Anderson*, 1999 ME 18, ¶ 7, 724 A.2d 1231. Due process protections encompassed within the Okla. Const. art. 2, § 7 and the federal document are coextensive. *Barzellone v. Presley*, see note 32, supra; *Presley v. Board of County Comm'rs*, 1999 OK 45, ¶ 8, 981 P.2d 309. Furthermore, there may be situations in which the Oklahoma

provision affords greater due process protections than its federal counterpart. *Turner v. City of Lawton*, 1986 OK 51, ¶ 10, 733 P.2d 375, *cert. denied*, 483 U.S. 1007, 107 S.Ct. 3232, 97 L.Ed.2d 738 (1987).

**55.** Title 40 O.S. Supp.2005 § 552, see note 9, supra. Miss.Code Ann. § 71–7–1(a) (Rev.1995) providing in pertinent part:

"(a) 'Confirmation test' means a drug and alcohol test on a specimen to substantiate the results of a prior drug and alcohol test on the specimen. The confirmation test must use an alternate method of equal or greater sensitivity than that used on the previous drug and alcohol test...."

procedures for "the collection of specimen samples." Because the statutory scheme referred to "specimen samples" only in relation to urine and blood—the Oklahoma Testing Act refers to confirmation testing in relation to urine,[56] the statutes were found to be ambiguous. The court looked to the regulatory language and to the legislative history and determined that the DOT's interpretation of the act—in which the agency determined that the specific requirement to preserve a specimen sample in the case of breath alcohol testing was not necessary—was reasonable.

### CONCLUSION

¶ 32 Regulations promulgated by the Board of Health make it clear that EBT devices are appropriate for both initial and confirmation testing. There is nothing in either the statutory or the regulatory language specifically requiring that employers utilize different machines for the first and second tests or that they preserve a breath sample from the initial test to be analyzed a second time. The question answered conforms with: the regulatory scheme as applied to ambiguous statutory language; rules of statutory construction; and extant jurisprudence.

**CERTIFIED QUESTION ANSWERED.**

WATT, C.J., LAVENDER, HARGRAVE, OPALA, KAUGER, EDMONDSON, TAYLOR, COLBERT, JJ., concur.

WINCHESTER, V.C.J., not participating.

---

56. See, ¶ 14 and accompanying footnotes, supra.